United States Court of Appeals,

Eleventh Circuit.

No. 95-6271.

H.S. GREGORY, G.E. Benson, John C. Erber, Plaintiffs-Appellees,

v.

ELECTRO-MECHANICAL CORPORATION, a Virginia corporation, Electrical Equipment, Inc., an Indiana corporation, Defendants-Appellants.

May 21, 1996.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV 94-L-3081-S), Seybourn H. Lynne, Judge.

Before ANDERSON and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

The issue in this case is the meaning of the words "arising hereunder" in the context of an arbitration provision contained in a larger agreement.

Does that language only require the arbitration of breach of contract claims, as the district court found, or does it require the arbitration of other disputes that originate out of or have a connection with that underlying agreement?

We hold that the agreement requires arbitration of all of the claims asserted in the complaint in this case, and therefore reverse the district court's decision restricting arbitration to the breach of contract claims.

This dispute involves the sale of majority stock by the plaintiff shareholders, the purchase price being based on the income of the company for the five years following the closing. The damage claim is based on the activities of the buyer in

connection with the generation of that income.

There is a detailed, 41-page Stock Purchase Agreement with detailed headings as set forth below and seven Exhibits. [1] The agreement includes the following arbitration clause:

14.03 *Arbitration.* After the consummation of the purchase of the Shares hereunder, any dispute between any of the Parties which may arise hereunder or under any agreement referred to as an exhibit herein, and which cannot be settled by mutual agreement will be referred to arbitration under the Rules of the American Arbitration Association. The place of arbitration will be Bristol, Virginia, or such other place as the parties to the arbitration may otherwise agree upon. The arbitration award will be final and binding upon the parties to such arbitration and may be entered in any court having jurisdiction. The expense of such arbitration will be shared equally by the parties thereto unless otherwise specified in the award. Each such party will pay the fees and expenses so its own witnesses and counsel.

---

[1] ARTICLE I RECITATIONS

ARTICLE II PURCHASE AND SALE OF SHARES

ARTICLE III PURCHASE PRICE AND PAYMENT OF CERTAIN DEBT

ARTICLE IV SHAREHOLDERS' REPRESENTATIONS AND WARRANTIES

ARTICLE V THE BUYER'S REPRESENTATIONS AND WARRANTIES

ARTICLE VI COVENANTS OF THE SHAREHOLDERS

ARTICLE VII COVENANTS OF THE BUYER

ARTICLE VIII CONDITIONS PRECEDENT TO BUYER'S OBLIGATIONS

ARTICLE IX CONDITIONS PRECEDENT TO SHAREHOLDERS' OBLIGATIONS

ARTICLE X CLOSING AND CLOSING DATE

ARTICLE XI INDEMNIFICATION BY SHAREHOLDERS

ARTICLE XII INDEMNIFICATION BY BUYER

ARTICLE XIII BROKERAGE

ARTICLE XIV MISCELLANEOUS

Not referenced by the parties is the following paragraph that would surely come into play as to issues concerning prior negotiations, omissions, and representations:

> 1407. *Final Writing.* This writing and the documents incorporated herein is intended by the Parties as the final and binding expression of its contract and agreement and is a complete and exclusive statement of the terms thereof, and supercedes all prior negotiations, representations and agreements. No representations, understandings or agreements have been made or relied upon in making of this Agreement other than those specifically set forth herein.

The plaintiffs argue that of the seven counts alleged in the complaint, six are for causes of action other than breach of contract, variously phrased in tort terms such as fraud, fraudulent inducement, deceit, misrepresentation, conversion, breach of good faith and fair dealing, and outrage. The issue is whether these claims fall within the scope of the arbitration agreement.

The law is clear that tort claims and claims other than breach of contract are not automatically excluded from a contractual arbitration clause. *Mitsubishi Motors v. Soler Chrysler-Plymouth,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (claims arising under the Sherman Act held arbitrable); *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed. 270 (1974) (fraudulent representation of status of trademark sold held arbitrable). Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted. *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.,* 1 F.3d 639, 643 (7th Cir.1993) ("a party may not avoid a contractual arbitration clause merely by casting its complaint in tort.") (citation omitted); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815

F.2d 840, 846 (2d Cir.1987) ("If the allegations underlying the claims "touch matters' covered by the sales agreements, then those claims must be arbitrated, whatever the legal labels attached to them.").

Although couched in various terms and theories of action, every claim in this complaint targets the fact that the plaintiffs did not receive the amount of money that they thought they should have for their stock and that the defendant buyer caused that loss.

The structure of the complaint and the allegations of fact reflect that these claims all arose under the agreement. There are seven counts, and every count incorporates all of the facts alleged in the count denominated as a breach of contract claim. Thus, the complaint itself says that the facts constituting defaults under the contract are a critical part of the so-called tort claims. If the buyer had fully complied with the contract, as interpreted by the plaintiffs, there would be no tort claims.

The plaintiffs' own analysis of the claims reflects that these claims all arose under the contract. Their brief summarizes the claims made as set forth in the footnote below.[2] It is apparent

_____

[2](a) EMC would cause EEI to pay all debts that were properly disclosed on EEI's balance sheet;  (b) EMC would inject sufficient funds into and cause EEI to repay Plaintiff Gregory for the personal loans he had made to EEI because EEI's financial strength was insufficient for it to repay that indebtedness on a fixed repayment schedule;  (c) EMC would operate EEI in the utmost good faith and fairness in order to maximize EEI's profits over the next five (5) years in order to share the maximum profits possible with the selling shareholders whose payment for their stock was contingent upon the profits of EEI;  (d) EMC would not increase EEI's general corporate overhead costs by more than twenty percent (20%) without thirty (30) days prior written notice to the selling shareholders so that the purchase price for their stock which was based on profits to be earned by EEI over the next five (5) years would not be diluted or lost altogether

from reading these claims that the alleged misrepresentations relate to what the EMC would do under the purchase contract. The omissions counts allege largely that EMC failed to disclose that it did not intend to comply with the contract. All of these claims depend upon EMC's failure to fulfill its perceived obligations in connection with the sale of stock.

We were told at oral argument that, although the district court did not state the premise upon which its decision was made, it relied upon an 11th Circuit case stressed by the plaintiffs to support the view that only breach of contract claims are arbitrable. *Seaboard Coast Line R.R. v. Trailer Train Co.,* 690 F.2d 1343 (11th Cir.1982). In *Seaboard,* this Court affirmed a denial of arbitration because there were two contracts, and the dispute did not relate to the one with the arbitration clause. In other words, if the parties performed the arbitrable contract perfectly, fulfilling all expectations under that contract, there would still be a cause of action for breach of the second contract which was made after the arbitrable contract. Thus *Seaboard* does not control this case.

The plaintiffs rely upon *In re Kinoshita,* 287 F.2d 951 (2d

---

by excessive overhead; (e) EMC would not transfer or relocate EEI's products, product lines or assets to its other operating companies and divisions without a full, fair and proper accounting of such transfers which could otherwise cause the purchase price to the selling shareholders of their stock of EEI which was based on profits for the next five (5) years to be diminished or lost altogether; and (f) EMC would not permit intercompany transfers, charges and credits between EEI and EMC's other operating companies to be handled in a manner so as to depress the revenues and profits of EEI during the next five (5) years which could result in a loss of the purchase price to be paid to the selling shareholders of their stock in EEI.

Cir.1961). In that case, the Second Circuit dealt with an arbitration clause requiring arbitration if "any dispute or difference should arise under this agreement." The court, although noting that "views more favorable to arbitration appear to be making headway," 287 F.2d at 953, held that that language did not include fraud in the inducement, apparently because the clause did not include words such as "or relating to this contract" or "in connection with" the agreement. As early as 1967, the Supreme Court held that a claim of fraud that related to inducement of an agreement generally is covered by an "arising out of or relating to this agreement" arbitration clause. *Prima Paint v. Flood & Conklin Mfg.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

Yet, the Court in *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed. 270 (1974), required no such additional language to require arbitration of the kind of claims asserted here. *Scherk* was a case regarding the purchase of three businesses along with rights held by the enterprises to trademarks. The buyer contended that the seller fraudulently misrepresented the status of trademark rights. The Supreme Court held that arbitration was required because the claim "arose out" of the contract.

To the extent that the cases binding on this Circuit may have left *Kinoshita* intact, we now reject it simply as not being in accord with present day notions of arbitration as a viable alternative dispute resolution procedure. The Second Circuit itself later recognized that the *Kinoshita* decision was inconsistent with federal policy favoring arbitration but, although obviously aware of the incorrectness of the decision, refused to

overrule the case only because lawyers in that circuit may have "relied on the case in their formulation of an arbitration provision." *S.A. Mineracao Da Trindade-Samitri v. Utah Int'l,* 745 F.2d 190, 194 (2d Cir.1984). Only the Ninth Circuit seems to have followed the decision in *Kinoshita. See Republic of Nicaragua v. Standard Fruit Co.,* 937 F.2d 469, 479 (9th Cir.1991), *cert. denied,* 503 U.S. 919, 112 S.Ct. 1294, 117 L.Ed.2d 516 (1992); *Mediterranean Enterprises, Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1464 (9th Cir.1983).

Both the Seventh and Fifth Circuits have more willingly followed the admonition of the Supreme Court that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Sweet Dreams Unlimited,* 1 F.3d at 642; *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane,* 773 F.2d 633, 637 (5th Cir.1985). *See Seaboard Coast Line,* 690 F.2d at 1348 ("This federal policy requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration.").

This Court has not drawn a distinction between the words "arising under" and "arising out of." In *Seaboard,* the language "[a]ny difference or dispute arising hereunder" was essentially the same as in this contract. *Id.* at 1345. This Court said such an "arbitration clause is broad" and went on to discuss cases with language like "arising out of or in connection with," and "[a]ny controversy or claim arising out of or relating to the breach" without the careful distinctions in language which the plaintiffs

would have us make. *Id.* at 1349-50.

Judge Medina himself, the writing judge in *Kinoshita,* would not have drawn a distinction. In dictum, he stated that he would have limited the arbitration whether the agreement "refers to disputes or controversies "under' or "arising out of' the contract." *In re Kinoshita & Co.,* 287 F.2d at 953. Interestingly, later cases such as *S.A. Mineracao* fixed on the difference in the terms, however, in order to avoid the *Kinoshita* result. *See Sweet Dreams Unlimited v. Dial-A-Mattress Int'l,* 1 F.3d 639, 642 (7th Cir.1993) ("We are not persuaded by Judge Medina's dicta in *Kinoshita* that suggests an equation between "arising under' and "arising out of.' "). The court had an "arising out of" contract, required arbitration of rescission and other tort claims, and saw no need to decide an "arising under" issue. The agreement did not contain any other modifying words such as "in relation to" or "in connection with."

Although the Court in *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), had before it an arbitration clause that referred to any controversy that "shall arise out of this agreement or the breach thereof," the Court's opinion seemed to use "arise out of" and "arise under" interchangeably.

Because all of the claims alleged in the complaint fall within the scope of the arbitration clause, this case is remanded to the district court for entry of a stay of the proceedings pending arbitration, and an order compelling arbitration, if that is deemed appropriate by the court.

REVERSED and REMANDED.