

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-30-2000

# Battaglia v. McKendry

Precedential or Non-Precedential:

Docket 99-1751

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Battaglia v. McKendry" (2000). *2000 Decisions.* Paper 238.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/238

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 30, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1751

RAYMOND J. BATTAGLIA, SR.,

Appellant,

v.

MARY ANN MCKENDRY; MARY ANNE BA TTAGLIA;
JAMES DOORCHECK, INC.; RAYMOND BATT AGLIA, JR.;
JAMES BATTAGLIA; AMERICAN ARBITRATION
ASSOCIATION; TIMOTHY B. BARNARD, ESQ.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 98-5321)
District Judge: Honorable Herbert J. Hutton

Argued: August 2, 2000

Before: ALITO, ROTH, and AMBRO, Cir cuit Judges

(Filed: November 30, 2000)

> JOSEPH M. TODDY, ESQUIRE
>  (Argued)
> Zarwin, Baum, DeVito, Kaplan,
>  O'Donnell & Schaer, P.C.
> 1515 Market Street, Suite 1200
> Philadelphia, PA 19102
>
> Counsel for Appellant

EDWARD W. FERRUGGIA, ESQUIRE
 (Argued)
Schnader, Harrison, Segal &
 Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103

Counsel for Appellees
Mary Ann McKendry, Mary Anne
Battaglia, James Doorcheck, Inc.,
Raymond Battaglia, Jr. and James
Battaglia

OPINION OF THE COURT

AMBRO, Circuit Judge

Raymond J. Battaglia, Sr. ("Battaglia") appeals from an order of the United States District Court for the Eastern District of Pennsylvania (the "District Court") that granted summary judgment in favor of Mary Ann McKendry, Mary Anne Battaglia, James Doorcheck, Inc., Raymond Battaglia, Jr. and James Battaglia (collectively, the "Appellees"), denied Battaglia's cross-motion for summary judgment and ordered that the parties' claims be arbitrated without further delay. Battaglia claims on appeal that the District Court erred by failing to hold that under Pennsylvania law the arbitrator does not have the authority to deter mine whether an issue is arbitrable. We conclude that the District Court did rule on this issue, and we affirm its ruling that under Pennsylvania law it was for the Court to determine the scope of the arbitration clause. Battaglia also asserts on appeal that the District Court err ed in finding that the arbitration clause was broad enough to reach (i) disputes relating to the formation of the underlying settlement agreement, and (ii) disputes arising from a related consulting agreement. We affirm the District Court's determination that the arbitration clause is sufficiently broad to reach disputes relating to the formation of the settlement agreement. However, because we conclude that there are genuine issues of material fact in dispute with respect to the integration of the settlement and consulting

2

agreements, we reverse and remand to the District Court to reconsider, in light of this opinion, whether the arbitration clause in the settlement agreement reaches disputes arising from the consulting agreement.

I. JURISDICTION AND STANDARD OF REVIEW

Jurisdiction was proper in the District Court pursuant to 28 U.S.C. S 1332. We have jurisdiction over the District Court's final order compelling arbitration under 28 U.S.C. S 1291.

Our review of the District Court's grant of summary judgment is plenary. See Becton Dickinson & Co. v. Wolckenhauer, 215 F.3d 340, 343 (3d Cir. 2000).

> [S]ummary judgment should be granted if, after drawing all reasonable inferences fr om the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and [that] the moving party is entitled to judgment as a matter of law.

Kornegay v. Cottingham, 120 F.3d 392, 395 (3d Cir. 1997) (quoting Spain v. Gallegos, 26 F.3d 439, 446 (3d Cir. 1994) (quoting Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993)). "Summary judgment may be granted based on the interpretation of a contract only if `the contract is so clear that it can be read only one way.' " PaineWebber Inc. v. Hofmann, 984 F.2d 1372, 1378 (3d Cir . 1993) (quoting Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987)).

II. FACTS

Battaglia is the father of Mary Ann McKendry, Raymond Battaglia, Jr. and James Battaglia and the father-in-law of Mary Anne Battaglia. Battaglia is also the for mer President of James Doorcheck, Inc. (the "Company"). Raymond Battaglia. Jr. and James Battaglia ar e the President and the Secretary/Treasurer, r espectively, of the Company. Raymond Battaglia, Jr., James Battaglia and Mary Ann

3

McKendry are each one-third shareholders in the Company. They held the same ownership interests and control of the Company in November 1990, at the time of the settlement at issue in this case.

Appellees Mary Ann McKendry and Mary Anne Battaglia are trustees under the Agreement of T rust of Mary A. Battaglia (the wife, now deceased, of Battaglia), dated March 12, 1985 (the "Trust").1 The Trust provides, among other things, that the "Trustees shall distribute to my husband, RAYMOND, all of the net income in annual or more frequent periodic installments." Upon Battaglia's death, the Trust provides that "the balance of principal then remaining of this trust shall be distributed to my [Mary A. Battaglia's] children."

Following his wife's death, Battaglia filed an action against the Appellees and others in the District Court captioned Battaglia v. Brantz, et al., Civil Action No. 90-1511 (the "Litigation"). In the Litigation, Battaglia complained that the trustees were not investing Trust assets in order to maximize income, but instead were maximizing principal to benefit themselves. It is not clear from the record what allegations wer e made with respect to the Company. In any event, the parties resolved the Litigation by entering into a settlement agr eement (the "Settlement Agreement") and a consulting agreement (the "Consulting Agreement," and together with the Settlement Agreement, the "Agreements").2 A form of the Consulting Agreement was attached to the Settlement Agr eement as

_____

1. While the Trust document names Geor ge M. Brantz, Esq. ("Brantz") as a third trustee, it is not clear whether Brantz remains a trustee.

2. Although there is no dispute that the settlement of the Litigation was memorialized in two separate documents -- the Settlement Agreement and the Consulting Agreement -- the parties apparently dispute whether the documents were executed concurrently. Battaglia asserts that the Consulting Agreement was executed on September 1, 1990, while the Settlement Agreement was executed on November 29, 1990. While the dates on the Agreements support Battaglia's position, the Appellees claim that they were executed concurrently on or about November 29, 1990, that language in the Settlement Agreement and Consulting Agreement supports their assertion and that the Consulting Agreement was merely backdated at Battaglia's insistence.

4

Exhibit A. The Settlement Agreement provides, among other things, that "[t]he Trustees shall invest the Trust assets in such a way as to maximize the income to Battaglia during his lifetime."

The Settlement Agreement contains several r eferences to the Consulting Agreement:

> NOW, THEREFORE, intending to be fully and legally bound, and in consideration of the mutual pr omises set forth herein, the parties hereto agr ee as follows:

> 1. Simultaneously with the execution of this Settlement Agreement, Battaglia and the Company have entered into a Consulting Agreement in the form attached hereto as Exhibit A.

> \*\*\*\*

> 8. All parties to this Settlement Agr eement will act in good faith to secure to Battaglia the benefits of this Settlement Agreement and all of the amounts due to him under the Consulting Agreement, and will cause the Company to do likewise. In the event of a transfer of Company assets . . . or of a transfer of a contr olling interest in the stock of the Company, the Company shall take whatever steps are necessary to ensure that the obligations due to Battaglia under the Consulting Agreement are paid by the transfer ee.

The Consulting Agreement also refers to the Settlement Agreement:

> 11. Miscellaneous. . . . The Settlement Agreement executed concurrently with this Consulting Agr eement, to which Settlement Agreement the Company and the Consultant, among others, are parties, does not merge into this Consulting Agreement.

The Settlement Agreement, which is gover ned by Pennsylvania law, contains an arbitration clause (the "Arbitration Clause"):

> 9. This Settlement Agreement and the obligations created hereunder shall be interpr eted under the laws of the Commonwealth of Pennsylvania, and the parties hereto further agree that in the event that any

5

> controversy arises hereunder, venue in Philadelphia,
> Pennsylvania with the American Arbitration Association
> is appropriate for the resolution of such controversy.

The Consulting Agreement, on the other hand, does not
contain an arbitration clause.

On December 29, 1997, Battaglia initiated arbitration
proceedings against the trustees with the American
Arbitration Association and alleged failure of the trustees to
abide by the terms of the Settlement Agr eement. In
particular, Battaglia complained that the trustees were not
investing Trust assets to maximize income to Battaglia as
required under the Settlement Agreement. On February 17,
1998, the Appellees filed a counterclaim in the arbitration
proceeding alleging, among other things, that the
Settlement Agreement was void from its inception by reason
of egregious duress committed by Battaglia. Battaglia's
subsequent motion to dismiss the arbitration counter claim
was itself dismissed by the arbitrator, T imothy B. Barnard,
Esq. (the "Arbitrator").

On October 7, 1998, Battaglia filed a Verified Complaint
in the District Court and sought a temporary r estraining
order enjoining the arbitration. The District Court denied
the request for a temporary restraining or der.

The parties subsequently filed cross-motions for
summary judgment. In a Memorandum and Order dated
July 29, 1999 (the "Memorandum Opinion"), the District
Court denied Battaglia's motion for summary judgment and
granted the Appellees' cross-motion for summary judgment.
The District Court ordered that the parties' claims be
arbitrated "without further delay." After judgment was
entered in favor of the Appellees and against Battaglia on
August 3, 1999, he filed a timely notice of appeal.

III. DISCUSSION

We address in order the thr ee issues Battaglia raises on
appeal: (1) who determines the scope of the Arbitration
Clause; (2) is the Arbitration Clause sufficiently broad to
cover disputes related to formation of the Settlement
Agreement; and (3) whether the Arbitration Clause in the

6

Settlement Agreement reaches disputes under the Consulting Agreement, which does not contain its own agreement to arbitrate.

A.

First, we must decide who has the authority under Pennsylvania law to determine the scope of the Arbitration Clause -- the Court or the Arbitrator. The issue arises because Battaglia questions whether the Arbitrator had the authority to decide whether the Appellees' dur ess counterclaim is arbitrable. By granting the Appellees' motion for summary judgment and indeed by dir ect statement in its Memorandum Opinion, the District Court made a ruling that it was for the Court to deter mine the scope of the Arbitration Clause. "[Battaglia's] attempts to raise the actual merits of the claims here ar e completely irrelevant to the issue of arbitrability, which is the only issue before the Court. See AT&T T echnologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 . . . (1986) (arbitrability of a dispute is for the court to decide)." Memorandum Opinion at 11. Cf. Flightways Corp. v. Keystone Helicopter Corp., 331 A.2d 184, 185 (Pa. 1975). "[W]hen deciding whether the parties agr eed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Under Pennsylvania law, "the threshold question of whether a party agreed to arbitrate a dispute is a jurisdictional question that must be decided by a court." Smith v. Cumberland Gr oup, Ltd., 687 A.2d 1167, 1171 (Pa. Super. Ct. 1997). Furthermore, there is no indication -- in the language of the Arbitration Clause or otherwise in the record before this Court -- that the parties intended to arbitrate the scope of the Clause itself. Consequently, this determination was pr operly made by the District Court. See First Options, 514 U.S. at 944 ("[C]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is `clea[r] and unmistak[able] evidence that they did so.") (second and thir d alterations in original).

7

B.

Battaglia's next argument on appeal is that the Arbitration Clause is limited to disputes involving the interpretation and performance of the Settlement Agreement, and thus the Clause does not encompass disputes going to the formation of that Agr eement. In particular, Battaglia asserts that because the Arbitration Clause uses the language "any controversy[that] arises hereunder [i.e., under the Settlement Agreement]," rather than broader language such as "any contr oversy arising under or related to the Settlement Agreement," the Arbitration Clause does not encompass the Appellees' counterclaim in the arbitration proceeding alleging that the Settlement Agreement was void from its inception by reason of egregious duress committed by Battaglia. For the reasons set forth below, we agree with the District Court that the Arbitration Clause is sufficiently broad to r each disputes regarding the formation of the Settlement Agreement.

In construing the scope of an arbitration clause, courts generally operate under a pronounced "pr esumption of arbitrability":

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

AT&T Techs., 475 U.S. at 650 (second alteration in original)(quoting United Steelworkers v. W arrior & Gulf Navigation Co., 363 U.S. 574, 581–82 (1960)). The Pennsylvania Supreme Court has adopted an identical rule. See Lincoln Univ. of the Commonwealth Sys. of Higher Educ. v. Lincoln Univ. Chapter of the Am. Ass'n of Univ. Professors, 354 A.2d 576, 581–82 (Pa. 1976). This presumption of arbitrability is particularly applicable wher e the arbitration clause at issue is broad. See AT&T T echs., 475 U.S. at 650 (finding to be broad a clause providing for arbitration of "any differences arising with r espect to the interpretation of this contract or the performance of any obligation hereunder").

8

In ordering arbitration, the District Court r elied on the presumption of arbitrability and on the "expansive, all-encompassing language" of the Arbitration Clause. Memorandum Opinion at 8-9. Cf. Flightways, 331 A.2d at 185 (broad language -- that arbitration is agreed for "[a]ny controversy or claim arising out of or r elating to this Agreement" -- "cannot be circumvented by an allegation that the contract was void ab initio because of fraud in the inducement").

In arguing that the Arbitration Clause has a more limited scope, Battaglia relies on In re Kinoshita & Co., 287 F.2d 951 (2d Cir. 1961), and cases relying thereon. But this line of cases has been discredited both in the Second Circuit and in other jurisdictions. In Kinoshita, the Second Circuit found that an arbitration provision providing for arbitration of "any dispute or difference . . . aris[ing] under" the contract containing the clause was not sufficiently broad to require arbitration of a claim alleging fraudulent inducement of the contract. See Kinoshita, 287 F.2d at 953. The Second Circuit explained that when an arbitration provision refers only to disputes "under" or "arising out of " a contact, arbitration is limited to disputes r elating to the interpretation of the contract and matters of performance. See id. The Court distinguished the arbitration clause at issue from clauses including disputes "r elating to" a contract, stating that the latter would encompass claims of fraud in the inducement. See id.

Although Kinoshita has not been formally overruled by the Second Circuit, that Court has repeatedly distinguished Kinoshita and limited the case to its pr ecise facts. The Second Circuit first limited Kinoshita in S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190 (2d Cir. 1984), where the Court found that an arbitration clause requiring arbitration of "any question or dispute . . . aris[ing] or occur[ring] under" the agreement was sufficiently broad to reach claims of fraud in the inducement. See id. at 192. The Court noted that while the distinction between the arbitration clause at hand and the clause at issue in Kinoshita was "far fr om overwhelming," it was "at least as reasonable as the distinction drawn in Kinoshita." Id. at 194. While the Court acknowledged that

9

Kinoshita is inconsistent with the federal policy favoring arbitration, it declined to overrule Kinoshita on policy grounds:

> We decline to overrule In re Kinoshita, despite its inconsistency with federal policy favoring arbitration, particularly in international business disputes, because we are concerned that contracting parties may have (in theory at least) relied on that case in their formulation of an arbitration provision. We see no reason, however, why we may not confine Kinoshita to its precise facts. We are confident that parties who have actually relied on Kinoshita[,] in an attempt to formulate a narrow arbitration pr ovision, have adopted the exact language of the arbitration provision involved in Kinoshita. The provision involved in Kinoshita required arbitration of "any dispute or difference aris[ing] under" the agreement. Thus, to ensure that an arbitration clause is narrowly interpreted contracting parties must use the foregoing phrase or its equivalent, although the better course, obviously, would be to specify exactly which claims are and ar e not arbitrable.

Id. (alteration in original).

The Second Circuit again distinguished Kinoshita in Genesco, Inc. v. T. Kakiuchi & Co., 815 F .2d 840 (2d Cir. 1987). There the Second Circuit found that an arbitration clause requiring arbitration of "all claims and disputes of whatever nature arising under this contract" was broad enough to reach claims of fraud in the inducement. See id. at 854. Although the only material differ ence between the clauses in Genesco and Kinoshita is that the former contains the phrase "of whatever nature," the Second Circuit rested its decision on this distinction:

> The instant clause is . . . distinguishable fr om the Kinoshita clause. The clause here r equires arbitration of "all claims and disputes of whatever natur e arising under this contract." . . . The phrase "of whatever nature" indicates the parties' intent to submit all claims and disputes arising under the contract to arbitration, whether they be tortious or contractual in nature.

10

Id.

Again, the Second Circuit declined to overrule Kinoshita:

> We are invited to overrule Kinoshita . While we
> recognize, as did [S.A. Mineracao], that Kinoshita is
> inconsistent with the federal policy favoring arbitration,
> nevertheless, we decline the invitation. Because the
> instant clause is distinguishable from the Kinoshita
> clause, we need not discuss the continued viability of
> Kinoshita. See Scherk [v. Alberto-Culver Co.], 417 U.S.
> at 508, 94 S.Ct. at 2451 (clause requiring arbitration of
> "any controversy or claim . . . aris[ing] out of this
> agreement" held to cover fraudulent misr epresentations
> claim).

Id. at 854 n.6 (citation omitted) (thir d alteration in original).
Although the Second Circuit does not discuss the
continued viability of Kinoshita, its citation to Scherk
implies that, even in the Second Circuit, Kinoshita is no
longer good law.3 Cf. St. Paul Fire & Marine Ins. Co. v.
Employers Reinsurance Corp., 919 F. Supp. 133, 135
(S.D.N.Y 1996) ("In both Second Circuit cases [i.e., S.A.
Mineracao and Genesco], . . . the court grappled with
Kinoshita and left it in tatters. . . . As a r esult, the authority
of Kinoshita is highly questionable in this Circuit.").

In light of the negative treatment affor ded Kinoshita --
even within the Second Circuit -- we decline to follow those
courts that have found Kinoshita persuasive in holding that
an arbitration provision such as the one at issue here does
not reach formation issues. In particular , we decline to
follow the Ninth Circuit, which apparently continues to
approve the teaching of Kinoshita. See Tracer Research
Corp. v. National Envtl. Servs. Co., 42 F .3d 1292, 1295 (9th
Cir. 1994) (finding that arbitration pr ovision applying to
disputes "arising out of " or "arising under" a contract is
limited to disputes relating to interpr etation and
performance of the contract itself); Mediterranean Enters.,
Inc. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th Cir.

_____

3. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 519-20 (1974).
Nonetheless, the breadth of the arbitration clause was not at issue
before the Court in Scherk.

1983) (finding that arbitration provision applying to disputes "arising hereunder" is limited to interpretation and performance of the underlying contract). Furthermore, we do not believe that the Pennsylvania courts, after consideration of S.A. Mineracao and Genesco, would be persuaded by A. Sulka & Co. v. SMI Indus., Inc. , No. 2094, 1979 Phila. Cty. Rptr. LEXIS 64 (Ct. C.R. Pa. June 26, 1979) (following Kinoshita and holding that arbitration provision covering disputes "arising out of this agreement" is limited to disputes relating to the interpr etation and performance of the agreement). Not only have the underpinnings for the A. Sulka Court's holding been eroded, but we can find no evidence that the opinion has been cited by any other court in Pennsylvania.

Instead, we will follow the Eleventh Circuit, which has recently rejected Kinoshita as"not being in accord with present day notions of arbitration as a viable alternate dispute resolution procedure." H.S. Gregory v. Electro– Mechanical Corp., 83 F.3d 382, 385 (11th Cir. 1996). In Gregory, the Court was asked to deter mine whether the counts alleged in a complaint, including a count for fraudulent inducement, fell within an arbitration pr ovision providing for arbitration of "any dispute . . . which may arise hereunder." See id. at 383. After considering the structure of the complaint and its factual allegations, the Eleventh Circuit concluded that, regar dless of the plaintiffs' characterization of the claims, they all arose under the agreement and thus were encompassed within the arbitration provision. See id. at 384–85. As an alternate basis for its decision, however, the Eleventh Circuit relied on the Supreme Court's decision in Scherk , where the Court found that an arbitration clause requiring arbitration of any controversy or claim arising out of the agreement covered a fraudulent misrepresentation claim. See id. at 385–86. In relying on Scherk, the Eleventh Circuit stated that it does not draw a distinction between the phrases "arising under" and "arising out of." See id. at 386. In fact, the Eleventh Circuit noted that the Scherk  Court seemed to use these terms interchangeably. See id.

In sum, when phrases such as "arising under" and "arising out of " appear in arbitration pr ovisions, they are

12

normally given broad construction, and ar e generally construed to encompass claims going to the for mation of the underlying agreements. See, e.g., St. Paul Fire & Marine Ins. Co., 919 F. Supp. at 135 ("Since 1961 [when Kinoshita was decided], both the Supreme Court and the Second Circuit have taken an increasingly br oad view of such phrases as "arising under" and "arising out of " in arbitration agreements, and have concluded that fraudulent inducement claims generally fall within their scope."). This construction of an arbitration provision is consistent with both federal and Pennsylvania precedent holding that an agreement to arbitrate a particular dispute"should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., 475 U.S. at 650; accord Lincoln Univ., 354 A.2d at 581–82. Accordingly, as a matter of Pennsylvania law, the Arbitration Clause is broad enough to encompass disputes relating to the formation of the Settlement Agreement. Because there is no genuine issue of material fact to be resolved at trial, we will affirm the District Court's grant of summary judgment with respect to this aspect of the case.

C.

Battaglia's final argument on appeal is that the Arbitration Clause contained in the Settlement Agr eement is not broad enough to reach disputes arising under the Consulting Agreement. In particular, Battaglia contends that the Agreements are separate and independent and, therefore, that the Arbitration Clause (pr esent in only the Settlement Agreement) does not apply to the Consulting Agreement. In contrast, the District Court found that all disputes between the parties –– including those r elating to the Consulting Agreement –– were subject to the Arbitration Clause. The Court's decision was based on the br eadth of the Arbitration Clause and the Court's conclusion, based on the language of the Agreements, that "the parties intended for the Settlement and Consulting Agr eements to be interdependent and interrelated documents." Memorandum Opinion at 10. We agree with the District Court that the applicability of the Arbitration Clause to the

13

Consulting Agreement turns on whether the Settlement Agreement and the Consulting Agreement should be construed as a single integrated agreement. But because we believe that there are genuine issues of material fact in dispute with respect to the integration of the Agreements, we conclude that the District Court erred in granting summary judgment in favor of the Appellees on this issue.

On the one hand, there exists evidence that the Agreements were intended to be interpreted as a single integrated agreement. First, it is undisputed that both Agreements memorialized the terms of the settlement of a single litigation. According to the terms of the Agreements and statements made by the Appellees in affidavits filed with the District Court, the Agreements were executed concurrently. Furthermore, a form of Consulting Agreement is attached to the Settlement Agreement as Exhibit A, and the Agreements contain various references to each other. Most significantly, the Settlement Agreement obligates all parties thereto to "act in good faith to secure to Battaglia . . . all of the amounts due to him under the Consulting Agreement, and will cause the Company to do likewise."

On the other hand, viewing the evidence in the light most favorable to Battaglia (as we must), the Agreements may be viewed as independent agreements, in which case the Arbitration Clause would not apply to disputes arising under the Consulting Agreement. First, the parties to the Agreements are not the same. While all the Appellees are parties to the Settlement Agreement, only the Company is a party to the Consulting Agreement.4  In Battaglia's Verified Complaint filed in the District Court, he states that "[i]n order to resolve the dispute between Battaglia and the Trustees, paragraph 2 of the Settlement Agreement provides in pertinent part that: `[The] Trustees shall invest the trust assets in such a way as to maximize the income to Battaglia during his lifetime.' " Battaglia further explains that "[i]n order to resolve the dispute between Battaglia and Doorcheck, the Consulting Agreement was drafted and provided in part that Battaglia would provide consulting services to Doorcheck in exchange for compensation." Thus,

_____

4. Of course, Battaglia is a party to both Agreements.

14

based on the limited record (which does not fully set forth the nature of the Litigation), it would be possible to conclude that the settlement was memorialized using two separate agreements because the relief sought against the Company was different from that sought against the other Appellees. If so, the parties may very well have intended the Agreements to be treated independently.

Next, even though the language of the Agreements suggests that they were executed concurr ently,5 the Consulting Agreement is dated almost thr ee months prior to the Settlement Agreement. While Battaglia r epeatedly states that the Agreements were executed as dated, the Appellees assert that the Agreements wer e executed concurrently, and that the Consulting Agr eement was merely back-dated at Battaglia's insistence. If the Consulting Agreement was executed three months prior to the Settlement Agreement, the argument that the Agreements must be interpreted together loses some of its force.

Finally, the Consulting Agreement is a valid contract on its face and could well be the product of a settlement of claims relating to Battaglia's alleged "ouster" as President of the Company. The terms of the Consulting Agr eement are fully set forth therein and, contrary to thefinding of the District Court,6 the Consulting Agreement does not rely on the Settlement Agreement for its terms. In fact, the Consulting Agreement's only reference to the Settlement Agreement -- in Paragraph 11 that "[t]he Settlement Agreement . . . does not merge into this Consulting Agreement" -- suggests a finding that the parties intended to treat the Agreements independently. A typical merger clause might state that "this agreement mer ges all prior negotiations and understandings between the parties and

_____

5. The Settlement Agreement provides that "[s]imultaneously with the execution of this Settlement Agreement, Battaglia and the Company have entered into a Consulting Agreement." The Consulting Agreement refers to the Settlement Agreement "executed concurrently."

6. The District Court found that "[i]t is the Settlement Agreement[ ] which
sets forth the terms of the Consulting Agr eement." Memorandum Opinion at 11.

15

constitutes their entire agreement." In other words, the standard merger clause causes prior negotiations and understandings to merge into and be extinguished by the subsequent agreement.7 By placing into the Consulting Agreement an anti-merger concept, it is plausible that the parties here were merely trying to underscore the independence of each Agreement. Battaglia especially had every incentive to assure that the payment pr ovisions of the Consulting Agreement were independent beyond peradventure from the Settlement Agr eement.

Because the evidence before the District Court regarding the independence/inter-dependence of the Agr eements is inconclusive, the District Court improperly granted the Appellees' cross-motion for summary judgment. Accordingly, we will reverse the judgment of the District Court with respect to this issue and remand for further proceedings consistent with this opinion.

IV. CONCLUSION

As set forth above, the District Court correctly determined that under Pennsylvania law it was for the Court -- and not the Arbitrator -- to deter mine whether an issue (in this case, the Appellees' duress claim) is arbitrable within the scope of the Arbitration Clause. Also, because we find that the Arbitration Clause is broad enough to encompass disputes relating to the formation of the Settlement Agreement, we will affirm the District Court's grant of summary judgment with respect to this aspect of the case. However, because there is a genuine issue of material fact in dispute with respect to the independence/interdependence of the Settlement and Consulting Agreements, we will reverse the judgment of the District Court with respect to this issue and r emand for further proceedings consistent with this opinion.

_____

7. This concept is distinct from integration. If agreement A merges into agreement B, the terms of agreement A are extinguished. On the other hand, if agreements A and B are deemed integrated, the provisions of agreement A are not extinguished, but rather are read in conjunction with the terms of agreement B.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

17