[DO NOT PUBISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 14, 2008
THOMAS K. KAHN

No. 07-13003

_____

D. C. Docket No. 06-CV-80966-DTKH

TRIPLE I: INTERNATIONAL INVESTMENTS, INC.,

Counter-Claimant-Appellee,

versus

K2 UNLIMITED, INC., et al.,

Counter-Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 14, 2008)**

Before BIRCH and FAY, Circuit Judges, and HINKLE,* District Judge.

HINKLE, District Judge:

_____
*Honorable Robert L. Hinkle, United States District Chief Judge for the Northern District of Florida, sitting by designation.

This appeal raises the issue of the arbitrability of specific claims arising from a commercial venture gone bad. The object of the venture was the construction of a cement plant in Nigeria. The parties to this appeal are the owner who proposed to build the plant and an agent the owner hired to help secure financing. The owner and agent entered a written agreement setting forth their respective rights and obligations. The owner later sued the agent for fraud (and on related theories), asserting the agent helped dupe the owner into paying a fee for nonexistent financing. The agent moved to compel arbitration based on a clause in the parties' agreement that required arbitration of "[a]ny legal dispute arising from" the agreement. The district court denied the motion. We reverse.

## I. Facts

Appellee Triple I: International Investments, Inc. ("Triple I") wished to build a cement plant in Nigeria. It needed a $520 million loan. It hired appellant K2 Unlimited, Inc. ("K2") to help find an entity that would issue a financial guarantee bond as collateral for the contemplated loan. Triple I and K2 entered a written agreement that was entitled "Intent-to-Collateralize and Fund Memorandum." R.1.71.12. The agreement called for K2 to "procure a Financial Guaranty Bond" and for Triple I to pay K2 a fee of five percent — $26 million — upon consummation of the loan transaction. *Id*. The agreement included a clause

2

that required arbitration of "[a]ny legal dispute arising from" the agreement. R.1.71.14.

K2 and others purportedly found a lender (Japan Venture Fund Group) and an issuer of a financial guarantee bond (International Underwriters AG & Liberty Re-Insurance Corporation, S.A. ("International")). For issuance of the bond, Triple I agreed to pay International a fee of $10.4 million, payable half in advance and half upon Triple I's receipt of the loan proceeds. Triple I made the $5.2 million advance payment through an escrow agent (W. E. Fielding and Associates), but the lender did not fund the loan. Despite an agreement between Triple I and International requiring all but $200 of the fee to be refunded if the bond was not used, International did not refund the fee. Triple I thus was out $5.2 million.

International filed a lawsuit in which it denied that Triple I was entitled to a refund of the entire $5.2 million but also sought to "interplead" that amount for a determination by the court of the parties' respective rights. Triple I counterclaimed. In due course International voluntarily dismissed its complaint, and Triple I twice amended its counterclaim. In the second amended counterclaim, Triple I asserted that the whole deal was a sham from the outset. Triple I named 11 counterclaim defendants, including K2, its chief executive

3

officer Diane Glatfelter, and its chief operating officer Robert Rice.  Triple I

sought recovery against K2 and the officers for fraud and under the Racketeer

Influenced and Corrupt Organizations Act.

K2 and its officers moved to compel arbitration based on the arbitration

clause in the "Intent-to-Collateralize and Fund Memorandum."  The district court

denied the motion.  K2 and the officers filed this appeal.  For convenience, in this

opinion we refer to K2 without continuing to refer to the officers; both sides

apparently agree that the officers' fate on this appeal rises or falls with that of K2.

## II.  Standard of Review

We review *de novo* a district court's decision on whether a dispute is

covered by an arbitration agreement.  *See, e.g., Employers Ins. of Wausau v. Bright

Metal Specialties, Inc.*, 251 F.3d 1316, 1321 (11th Cir. 2001).

## III.  Merits

A dispute ordinarily is arbitrable if the parties have agreed to arbitrate it.  As

we have said:

> Absent some violation of public policy, a federal court must refer to
> arbitration any controversies covered by the provisions of an arbitration
> clause.  *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th
> Cir.1992).  Whether a party has agreed to arbitrate an issue is a matter of
> contract interpretation: "[A] party cannot be required to submit to arbitration
> any dispute which he has not agreed so to submit."  *United Steelworkers of*

4

*America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

*Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001). The canons of construction run in favor of arbitration. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Triple I and K2 agreed to arbitrate "[a]ny legal dispute arising from" their agreement. R.1.71.14. The question thus is whether the disputes at issue — that is, the claims set forth in the second amended counterclaim — "arise from" the agreement. They do.

Triple I has sued K2 for fraud (and on related theories), not for breach of the agreement. But the agreement defined the parties' entire relationship. Had K2 performed the agreement by finding an actual issuer of a financial guarantee bond, Triple I would have had nothing to complain about. Instead, at least according to the allegations of the second amended complaint, K2 participated in a charade. K2's failure to perform the agreement is squarely at the heart of Triple I's fraud claims.

In *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996), the parties entered an agreement with a clause requiring arbitration of "any dispute between any of the Parties which may arise hereunder." A dispute arose, and one set of parties filed a lawsuit against another set of parties asserting claims for fraud and for other torts as well as for breach of contract. The district court refused to compel arbitration, but we reversed. We framed the issue as "the meaning of the words 'arising hereunder' in the context of an arbitration provision contained in a larger agreement." *Gregory*, 83 F.3d at 383. We held that the phrase encompasses not only breach of contract claims, but also tort claims of the type at issue. We said that if the party accused of wrongdoing "had fully complied with the contract, as interpreted by the plaintiffs, there would be no tort claims." *Gregory*, 83 F.3d at 384.

The case at bar is not meaningfully distinguishable from *Gregory*. There the arbitration clause applied to "any dispute . . . which may arise hereunder," that is, under the larger agreement of which the arbitration clause was a part. In the case at bar, the arbitration clause applies to "[a]ny legal dispute arising from" the agreement. There is no substantive difference. In *Gregory*, the lawsuit alleged fraud, other torts, and breach of contract, but the court addressed the arbitrability of the tort claims without suggesting that the presence of an express breach of

6

contract count was important to the analysis. Here the lawsuit alleges fraud and other torts. And here, as in *Gregory*, if the party accused of wrongdoing "had fully complied with the contract, . . . there would be no tort claims." *Gregory*, 83 F.3d at 384.[1] If, as we held in *Gregory*, the district court was required to compel arbitration of the fraud and other tort claims at issue there, then the district court was equally required to compel arbitration of the fraud and other tort claims at issue here.

More recent decisions are fully consistent with this conclusion. In *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109 (11th Cir. 2001), we summarized our decisions addressing an arbitration clause applicable to disputes "arising from" or "related to" an underlying agreement. Citing *Gregory*, we said, "We have required arbitration where the tort could not have occurred but for a breach of contract." *Telecom Italia*, 248 F.3d at 1114-15. And we said that, under *Gregory* and our other decisions, a dispute "arises out of" a contract if it is "related — with at least some directness — to performance of duties specified by the

---

[1] Finding that a tort could not have occurred but for a *breach* of a contract is different from finding that the tort could not have occurred but for the *existence* of the contract. A tort that could not have occurred but for the existence of the contract does not necessarily arise from the contract. *See Seaboard Coast Line R.R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1351 (11th Cir. 1982) (saying that a dispute does not "arise out of or in connection with" a contract just because the dispute would not have arisen if the contract "had never existed"), *quoting Necchi v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693, 698 (2d Cir. 1965).

contract." *Telecom Italia*, 248 F.3d at 1116. *See also Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1311 (11th Cir. 2005) (broadly construing agreement to arbitrate any dispute "arising from or relating to" the contract at issue).

The case at bar easily comes within the *Telecom Italia* formulations of the test for determining whether a claim "arises from" an agreement. The torts alleged by Triple I "could not have occurred but for" K2's failure to perform the agreement. And the dispute is "related — with at least some directness — to" K2's performance (or, more accurately, failure to perform) the agreement. Triple I's claims thus arise from the agreement and must be arbitrated.

## IV. Conclusion

The parties agreed to arbitrate disputes of the kind now at issue. The order denying the motion to compel arbitration is REVERSED and the case is REMANDED for entry of an order compelling arbitration.