[Cite as *Malburg v. Shaughnessy*, 2012-Ohio-5419.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98092**

# ROBERT MALBURG

PLAINTIFF-APPELLEE

vs.

# MICHAEL SHAUGHNESSY, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-763507

**BEFORE:**  Stewart, J., Blackmon, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:**  November 21, 2012

**ATTORNEYS FOR APPELLANTS**

Christine M. Garritano
Robert B. Casarona
Roetzel & Andress, LPA
One Cleveland Center, 9th Floor
1375 East 9th Street
Cleveland, OH   44114


**ATTORNEYS FOR APPELLEE**

Alan N. Hirth
Debra J. Horn
Meyers, Roman, Friedberg & Lewis
28601 Chagrin Boulevard, Suite 500
Cleveland, OH   44122

MELODY J. STEWART, J.:

{¶1} Defendants-appellants Michael Shaughnessy and John Haugh, the principal owners of a corporation named ColorMatrix, appeal from an order that denied their motion to have a lawsuit filed by plaintiff-appellee Robert Malburg stayed and referred to arbitration.  Malburg, a salesperson for ColorMatrix, filed a complaint that alleged that Shaughnessy and Haugh promised him an ownership stake in the corporation in exchange for restructuring his compensation pursuant to the terms of a deferred compensation agreement.   Shaughnessy and Haugh did not answer the complaint, but sought arbitration on grounds that the deferred compensation agreement contained an arbitration clause that required arbitration of "any dispute" between the parties relating to the interpretation,

breach, or enforcement of the agreement. The court denied the motion without opinion. The sole assignment of error contests the court's refusal to refer the matter to arbitration.

{¶2} Our task is to determine whether the facts alleged in the complaint fall within the arbitration clause in the deferred compensation agreement. In doing so, we recognize that "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir.1996).

{¶3} Malburg alleged that he began employment with ColorMatrix in 1990 and received a salary in addition to a 4 percent commission on any sales. In 1997, Shaughnessy and Haugh told him that they could not afford to pay his commissions. They proposed that Malburg forego his commission in exchange for a straight salary and a deferred compensation plan. That same year, Shaughnessy and Haugh allegedly promised Malburg that they would grant him an ownership stake in ColorMatrix to compensate him for the loss of income. Malburg signed the deferred compensation agreement on October 31, 1997. That agreement contained an arbitration agreement that required the parties to arbitrate any dispute "relating to the execution, interpretation, breach or enforcement of the Agreement or the Plan * * *."

{¶4} Malburg alleged that in 1998, Shaughnessy and Haugh proposed that in lieu of paying him on commission, they would grant Malburg a 5 percent ownership stake in ColorMatrix. He agreed to these terms but claimed that Shaughnessy and Haugh kept changing the terms of the deferred compensation plan. He alleged that when he

complained about these changes, he was told that "as an owner of ColorMatrix" he should not try to "kill the goose that lays the golden egg" and that "you have to trust us." When Malburg asked for a document "formalizing" his ownership interest, Shaughnessy and Haugh "told him that they did not want to issue formal stock due to the legal complexity in doing so and that they did not want to reveal ColorMatrix's financial statements."

{¶5} In 2000, Shaughnessy and Haugh changed the deferred compensation plan to a bonus program, but they only authorized bonuses in the years 2000 and 2002. Malburg alleged that Shaughnessy and Haugh continued to assure him that "he would be more than compensated by his ownership interest in ColorMatrix." In 2006, ColorMatrix was acquired by another company. Shaughnessy and Haugh remained shareholders in the company. Malburg alleged that "[i]n order to have taxes paid on Malburg's deferred compensation plan, he was required to put the monies from the plan into company stock." He did not receive any compensation from the sale of the stock but was promised "that he would be paid after the next sale, when Defendants sold their remaining stock." In 2011, ColorMatrix was again sold and Malburg made a demand based on his 5 percent ownership share. He claimed that Shaughnessy and Haugh refused to issue his stock.

{¶6} There is such a strong presumption in favor of arbitration, *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 500, 1998-Ohio-612, 692 N.E.2d 574, that an agreement to arbitrate must be enforced unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 1998-Ohio-294, 700 N.E.2d 859.

When, as here, an arbitration clause is broad ("any dispute"), the presumption in favor of arbitrability is even greater. *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 18.

{¶7} Despite there being a strong presumption in favor of arbitration, arbitration is a matter of contract and a party cannot be forced to arbitrate that which the party has not agreed to arbitrate. *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20. For that reason,

> although any ambiguities in the language of a contract containing an arbitration provision should be resolved in favor of arbitration, the courts must not "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated."

*Id.*, quoting *Equal Emp. Opportunity Comm. v. Waffle House*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002).

{¶8} Shaughnessy and Haugh argue that the court should have read the deferred compensation agreement as encompassing an agreement to grant Malburg an ownership interest in ColorMatrix because it was intended to compensate Malburg for the money he would lose by foregoing his commission. This argument relies on a selective reading of the factual allegations of the complaint. The implementation of the deferred compensation agreement occurred in 1997, but Malburg alleged that it was not until 1998 that Shaughnessy and Haugh made a firm promise for a 5 percent ownership interest. The terms of the deferred compensation agreement reflect this reality — nothing in the

deferred compensation agreement says anything about granting Malburg an ownership interest in ColorMatrix as compensation for his foregoing his sales commission.

{¶9} There is no basis for implying that the arbitration clause contained in the deferred compensation agreement could be applied to a subsequent agreement to grant Malburg an ownership interest. The arbitration clause is limited to disputes "relating to the execution, interpretation, breach or enforcement of the Agreement or the Plan * * *." An objective reading of the allegations of the complaint yields no basis for finding that a promise to grant Malburg an ownership interest in ColorMatrix was part and parcel of the deferred compensation agreement.

{¶10} Shaughnessy and Haugh argue that an alleged oral agreement to grant Malburg an ownership interest would be a form of compensation that would necessarily invoke the deferred compensation agreement and thus invoke the arbitration clause of the deferred compensation agreement. That conclusion rests on the faulty premise that the deferred compensation agreement controlled the entirety of Malburg's compensation. Suppose ColorMatrix decided to reinstate Malburg's commission structure in a separate agreement, but made no changes to the deferred compensation program. There would be no colorable argument that a breach of the subsequent agreement to pay a commission would be subject to arbitration under the deferred compensation agreement. For the same reason, the alleged promise to grant Malburg an ownership interest in ColorMatrix existed separate and apart from the deferred compensation agreement. This is

particularly true when the alleged promise to grant Malburg an ownership interest was antecedent to and unrelated to the scope of the deferred compensation agreement.

{¶11} We find that the court did not err by refusing to stay the proceedings and refer the matter to arbitration. Nothing in the deferred compensation agreement could be construed as encompassing a later promise to grant Malburg an ownership interest in ColorMatrix.

{¶12} Judgment affirmed.

It is ordered that appellee recover of appellants his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

PATRICIA ANN BLACKMON, A.J., and
MARY J. BOYLE, J., CONCUR