**AXA EQUITABLE LIFE INSURANCE CO., Plaintiff,**

v.

**INFINITY FINANCIAL GROUP, LLC, et al., Defendants.**

**Case No. 08–80611–CIV.**

United States District Court, S.D. Florida.

March 31, 2009.

Gary John Guzzi, Akerman Senterfitt, Miami, FL, John N. Bolus, Michael D. Mulvaney, Christopher C. Frost, Maynard Cooper & Gale, Birmingham, AL, for Plaintiff.

Ira Gutt, Behar, Gutt & Glazer, P.A., Aventura, FL, Lawrence Phillip Ingram, Jessica Kirkwood Alley, Ryan C. Hasanbasic, Phelps Dunbar, Tampa, FL, for Defendants Infinity Financial Group, LLC, Steven Brasner, Infinity Wealth Advisors, LLC, Infinity Boynton Beach, LLC, Infinity Wealth and Investments, LLC, Infinity Wealth and Insurance LLC, Infinity Wealth and Tax LLC, and Infinity Wealth and Marketing LLC.

Charles Germain Geitner, Broad & Cassel, Tampa, FL, Kelly B. Holbrook, Broad & Cassel, Tampa, FL, Zachary Adam Harrington, Broad & Cassel, Tampa, FL, for Defendants Kevin H. Bechtel, Gary Richardson, and Life Brokerage Equity Group, Inc.

Mitchell Reid Bloomberg, Natalie Jessica Carlos, Neil Preseton Linden, Adorno & Yoss LLP, Miami, FL, for Defendant The Harlan Altman Insurance Trust Dated September 1, 2006, Kristine M. Neuhauser, The Carol Sciolino 2006 Life Insurance Trust dated December 19, 2006, and NatCity Trust Company of Delaware.

Jonathan Galler, Matthew Henry Triggs, Proskauer Rose, Boca Raton, FL, for Defendant The Geoffrey Glass 2007-1 Insurance Trust dated Jan. 1, 2007, The Walter Glass 2006 Insurance Trust dated September 1, 2006, and The Geoffrey Glass 2007-2 Insurance Trust dated January 1, 2007.

Stephanie Reed Traband, Jones Walker, Miami, FL, for Defendant Harlan Altman.

James D. Sallah, Sallah & Cox LLC, Joshua Arnold Katz, Klein & Sallah LLC, Boca Raton, FL, for Defendant Carol Sciolino.

Geoffrey Glass, Chicago, IL, pro se.

Walter Glass, Chicago, IL, pro se.

Scott Barry Newman, Holland & Knight, West Palm Beach, FL, for Defendant Greatbanc Trust Company.

## ORDER ADOPTING–IN–PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

DANIEL T.K. HURLEY, District Judge.

**THIS CAUSE** is before the court upon the motions of two groups of defendants (the Infinity Defendants[1] and the LBEG Defendants[2]) to compel arbitration and stay the litigation pending the outcome of that arbitration [DE # 54, 59] and the report and recommendation of the United States Magistrate Judge, recommending that defendants' motions be granted [DE # 126]. Plaintiff filed an objection to the magistrate judge's report and recommendation [DE # 130].

Pursuant to Fed.R.Civ.P. 72(b), "The district judge ... shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." The rule requires that objections be filed within ten days of service of the report and recommendation, and that the objecting party arrange for transcription of sufficient portions of the record. Fed.R.Civ.P. 72(b). The district judge may then "accept, re-

---

1. The "Infinity Defendants" include Steven Brasner, Infinity Financial Group, LLC, Infinity Wealth Advisors, LLC, Infinity Boynton Beach, LLC, and Infinity Wealth & Insurance, LLC.

2. The "LBEG Defendants" include Gary Richardson, Kevin H. Bechtel, and Life Brokerage Equity Group, Inc.

ject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.* Portions of the report and recommendation that are not specifically objected to are subject to the clear error standard. The identical requirements are set forth in 28 U.S.C. § 636(b)(1).

The defendants seeking to compel arbitration and to stay the litigation are insurance brokers and related entities; the named insured and several trusts are also defendants in the litigation. Plaintiff does not object to the magistrate judge's conclusion that arbitration should be compelled; the objection takes issue only with the magistrate judge's recommendation that the entire litigation, including resolution of plaintiff's non-arbitrable claims against other defendants, be stayed pending the outcome of arbitration.

■ The Eleventh Circuit explained the law regarding stays in cases involving both arbitrable and non-arbitrable claims in *Klay v. All Defendants,* 389 F.3d 1191 (11th Cir.2004):

> For arbitrable issues, the language of [9 U.S.C. § 3] indicates that the stay is mandatory. When confronted with litigants advancing both arbitrable and nonarbitrable claims, however, courts have discretion to stay nonarbitrable claims. In this instance, courts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation. Crucial to this determination is whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision.

*Id.* at 1203–04. Here, it appears that it is entirely feasible to proceed with parallel litigation against the insured and trust defendants while arbitration is pending with respect to the broker defendants. The non-arbitrable claims are essentially for rescission of the insurance policies for mis-

representations allegedly made on the applications, and for lack of an insurable interest at the time the policies were issued. It appears much more likely that the claims against the brokers for fraud, negligence, and disgorgement of commissions are dependent on a finding that the policies are subject to rescission, than the other way around. In other words, the policies may be subject to rescission regardless of whether the brokers are liable for fraud or negligence; but the status of the policies may bear significantly on the brokers' liability. For this reason, it would be inefficient to stay the outcome of the non-arbitrable rescission claims pending arbitration of the claims against the brokers.

Nor do the arbitrable claims predominate over the non-arbitrable claims. They are easily severable, and parallel litigation and arbitration appears both feasible and preferable to a stay. Accordingly, it is hereby **ORDERED** and **ADJUDGED:**

1. Plaintiff Axa Equitable Life Insurance Company's objection to the report and recommendation of the magistrate judge [DE # 130] is **SUSTAINED.**

2. The report and recommendation of the magistrate judge [DE # 126] is **ADOPTED IN PART** and, to the extent that it comports with the provisions of this order, is incorporated herein by reference.

3. Defendants' motions to compel arbitration and stay the litigation [DE # 54, 59] are **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. The motions to compel arbitration are **GRANTED.** Pursuant to 9 U.S.C. § 3, the litigation of all claims against defendants Steven Brasner, Infinity Financial Group, LLC, Infinity Wealth Advisors, LLC, Infinity Boynton Beach, LLC,

Infinity Wealth & Insurance, LLC, Gary Richardson, Kevin H. Bechtel, and Life Brokerage Equity Group, Inc. are **STAYED.**

b. The motions are **DENIED** to the extent they seek a stay of the claims asserted by plaintiff against other defendants, and not subject to the arbitration ordered herein.

*OMNIBUS REPORT AND RECOMMENDATION AS TO MOTIONS TO COMPEL ARBITRATION AND STAY PROCEEDINGS FILED BY STEVEN BRASNER AND RELATED DEFENDANTS, AND DEFENDANTS LIFE BROKERAGE EQUITY GROUP, GARY RICHARDSON, AND KEVIN H. BECHTEL (DEs 54, 59)*

JAMES M. HOPKINS, United States Magistrate Judge.

**THIS CAUSE** is before the Court upon Order referring two separate motions to compel arbitration and stay proceedings for a Report and Recommendation. (DE 54, 55, 59, 74). This Court has before it (1) a Motion to Compel Arbitration and Stay Proceedings Pending Arbitration filed by Defendants Steven Brasner ("Brasner") and a group of Defendants referred to as the "Related Defendants;"[1] (2) a Motion to Compel Arbitration and for an Order Staying these Proceedings Pending the Conclusion of Arbitration filed by Defendants Life Brokerage Equity Group, Inc. ("LBEG"), Gary Richardson ("Richard-

son"), and Kevin H. Bechtel ("Bechtel"), (3) responses in opposition filed by Plaintiff; (4) replies filed by the respective Defendants; and, (5) an objection to both motions to compel arbitration filed by a collective group of Defendants referred to as the "Delaware Trust Defendants."[2] (DEs 54, 59, 60, 82, 88, 89, 93). The matters are now ripe for review. For the reasons that follow, this Court **RECOMMENDS** that the District Court **GRANT** the Motions to Compel Arbitration, and **GRANT** the Motions to Stay. (DEs 54, 59).

**BACKGROUND**

In the original and first amended complaints, Plaintiff, AXA Equitable Life Insurance Company ("AXA"), seeks to rescind five (5) insurance agreements[3] which were allegedly procured by Defendants through improper and fraudulent means. (DE 1, pg. 2; DE 50, pg. 2). According to the complaint and amended complaint, AXA issued policies between July of 2006 and February of 2007 insuring the lives of Defendants Harlan Altman, Geoffrey Glass, Walter Glass, and Carol Sciolino ("the insureds"). (DE 1, pg. 2). Although the policies, valued at approximately seventy-three million dollars ($73,000,000.00), were obtained upon facially valid applications, such policies are alleged to be part of a scheme perpetrated by (a) the insureds; (b) Defendant Life Brokerage Equity Group ("LBEG"); (c) a group of brokers including Defendants Gary Richardson ("Richardson") and Kev-

1. The Related Defendants consist of Infinity Financial Group, LLC; Infinity Wealth Advisors, LLC; Infinity Boynton Beach, LLC; and, Infinity Wealth & Insurance, LLC. (DE 54, pg. 1).

2. According to the Objection, the Delaware Trust Defendants consist of Harlan Altman Insurance Trust dated September 1, 2006; Walter Glass 2006 Insurance Trust dated September 1, 2006; Carol Sciolino 2006 Life

Insurance Trust dated December 16, 2006; Kristine M. Neuhauser and NatCity trust Company of Delaware. (DE 82, pg. 1).

3. The type of insurance agreements at issue herein, commonly referred to as "stranger owned life insurance" or "investor originated life insurance," have recently become part of a large secondary market wherein investors seek to obtain a financial interest in the life insurance policies of others. (DE 50, pg. 6).

in H. Bechtel ("Bechtel"), led by Defendant Steven Brasner ("Brasner"); and, (d) Defendants Kristine M. Neuhauser, Walter Glass and their respective trust companies (the "Trusts"). (DE 1, pg. 2; DE 50, pg. 2). As part of the scheme, Defendants purportedly devised a plan to recruit elderly persons to pose as applicants and owners of large insurance policies. (DE 1, pg. 2; DE 50, pg. 2). After the policies issued, ownership of the policies allegedly changed to the brokers, the insurance trusts, the trustees, and their unnamed investors in an effort to avoid the insurable interest requirements of state law so that the policies could be resold to third-party investors looking to wager on the lives of the insureds. (DE 1, pgs. 2–3; DE 50, pgs. 2–3). Plaintiff seeks declaratory relief, rescission of the policies, and disgorgement of the brokers' commissions. (DE 88, pg. 1).

Brasner is alleged to be the principal of Defendant Infinity Financial Group, LLC, and its subsidiaries ("the related Infinity Defendants"). (DE 50, pg. 4). Defendants Richardson and Bechtel are both alleged to be principals and/or officers of Defendant LBEG. (DE 50, pg. 4).

After Plaintiff filed its first amended complaint, the instant motions to compel arbitration followed. (DEs 50, 54, 59).

## DISCUSSION

The Supreme Court has long recognized and enforced a liberal policy in favor of arbitration. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Howsam*, 537 U.S. at 82, 123 S.Ct. 588 (*quoting Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). *See also Scott v. Prudential Secs., Inc.*, 141

F.3d 1007, 1011 (11th Cir.1998) (observing that because arbitration is a creature of contract, no party can be compelled to submit to arbitration without having given prior contractual consent to do so) (*citing AT & T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). Arbitrators derive their authority to resolve disputes only as a result of the parties' agreement to submit the dispute to arbitration. *See AT & T Techs., Inc.*, 475 U.S. at 649, 106 S.Ct. 1415. Because parties can only be forced to arbitrate issues where they have specifically agreed to arbitrate, courts hesitate to interpret silence or ambiguity in favor of arbitration out of fear that to do so might force parties to arbitrate an issue they would reasonably have thought a judge, not an arbitrator, would decide. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (*citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–220, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) for the proposition that the basic purpose of the FAA is to ensure judicial enforcement of privately made agreements to arbitrate).

### Choice of Law

In determining whether the parties agreed to arbitrate a particular matter, courts are generally required to apply ordinary state law principles as to the formation of contracts. *See First Options*, 514 U.S. at 944, 115 S.Ct. 1920. *See also Scott*, 141 F.3d at 1011 (*citing First Options*, 514 U.S. at 944, 115 S.Ct. 1920); *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) ("Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements.") (*citation omitted*). All of the agreements executed by the parties provide that the law of the state of New York would be control-

ling. (DE 54, exh. A, ¶ 26; DE 54, exh. B, ¶ 29; DE 59, exh. A, ¶ 10(j)). However, only LBEG cites any New York law in its pleadings. (DE 60, pgs. 2–8). Although Brasner and AXA cite opinions issued by a number of different courts, neither Brasner nor AXA cite any New York law. (DE 54, pgs. 2–15; DE 88, pgs. 2–8; DE 89, pgs. 2–15).[4]

Choice of law provisions can be waived where the parties fail to raise the issue with the Court either by objection or by failing to cite to the law provided for in the choice of law provision. *See Am. Home Assur. Co. v. Glenn Estess & Assoc., Inc.,* 763 F.2d 1237, 1238–1239 (11th Cir.1985) (holding that the district court did not abuse its discretion in denying motion to alter/amend judgment where the plaintiff raised the choice of law issue for the first time after the entry of summary judgment); *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.,* 619 F.2d 1001, 1004 n. 1 (3d Cir.1980) (holding that parties waived any choice of law objection by not raising an objection); *Schlumberger Tech. Corp. v. Blaker,* 859 F.2d 512, 514 (7th Cir.1988) (finding that the parties' silence as to choice of law waived any challenge to the district court's decision to employ Indiana law) (citations omitted); *Laidlaw, Inc. v. Student Transp. of Am.,* 20 F.Supp.2d 727, 750 (D.N.J.1998) (finding that the parties waived their right to argue the applicability of the laws of Ontario, Canada, because although the parties' agreements stated that the agreements were to be governed by the laws of Ontario, the parties' pleadings relied on New Jersey Law, and at a hearing, the parties agreed that New Jer-

sey law would control) *(citation omitted)*; *Hanson Eng'rs Inc. v. UNECO, Inc.,* 64 F.Supp.2d 797, 799 (C.D.Ill.1999) (finding that the parties waived potential reliance on state law as provided for in the contract's choice of law provision because the parties relied on federal law in their arguments to the court) *(citations omitted)*; *Smith v. Lucent Tech., Inc.,* No. Civ.A. 02–0481, 2004 WL 515769, *7 n. 32 (E.D.La. March 16, 2004) (finding that party waived reliance on New York law as to interpretation of forum selection clause because the party relied primarily on federal law in support of his claim) *(citations omitted)*; *Cinram, Inc. v. Worldwide Entm't Group,* No. IP99–1296–C–T/G, 2000 WL 1124591, *4 (S.D.Ind. Aug. 7, 2000) *(same)* *(citations omitted)*.

As mentioned previously, only the LBEG motion cites any New York law. (DE 60, pgs. 2–8). Therefore, this Court concludes that the LBEG motion should be decided under New York law, but that the Brasner motion should be decided under federal common law. *See Laidlaw, Inc.,* 20 F.Supp.2d at 750; *Hanson Eng'rs Inc.,* 64 F.Supp.2d at 799; *Smith,* 2004 WL 515769 at *7 n. 32; *Cinram, Inc.,* 2000 WL 1124591 at *4.

### I. Motion to Compel Arbitration filed by Brasner and Related Infinity Defendants

■ In the motion filed by Brasner and the related Infinity Defendants, Defendants contend that arbitration should be compelled because (1) the arbitration clauses contained in the relevant agreements executed between Brasner and AXA

---

4. Brasner and the related Infinity Defendants cite opinions issued by the United States Supreme Court, the Eleventh Circuit and courts controlled by the Eleventh Circuit, the United States District Court for the District of Massachusetts, as well as the Fifth Circuit. (DE 54, pgs. 2–15). In its responses to the motions, AXA cites opinions issued from the (1) United States Supreme Court; (2) the Eleventh Circuit; (3) the Tenth Circuit; (4) the Eighth Circuit; (5) the United States District Court for the District of Kansas, the Southern District of West Virginia, and the Middle District of Alabama; (6) and the state courts of Florida and Alabama. (DE 88, pg. 2–11; DE 89, pgs. 2–12).

require that any controversy, claim, or dispute be sent to arbitration, and the claims contained in the complaint are subject to arbitration; (2) notwithstanding the fact that the related Infinity Defendants are not signatories to the agreements executed by Brasner, AXA's claims against the Infinity Defendants should also be subject to arbitration; and, (3) the rescission claims against the Insureds, Trusts, and trustees should be stayed because the rescission claims are dependent upon the claims against Brasner and the related Infinity Defendants. (DE 54, pgs. 2–15).

In response, AXA argues that the claims against Brasner and the Infinity Defendants are not subject to arbitration because (1) the claims asserted against Brasner and the Infinity Defendants arise out of the insurance policies themselves, rather than the agreements containing the arbitration provision; (2) Florida law governing the enforcement of insurance policies operates to "reverse preempt" application of the FAA herein; and, (3) the claims of the Infinity Defendants are not subject to arbitration because the Infinity Defendants are not signatories to the agreements containing the arbitration provisions. (DE 89, pgs. 1–8). AXA also argues that if the Court is inclined to compel arbitration, AXA should be permitted to conduct limited discovery into the conduct of the Infinity Defendants and the roles they played in the underlying transactions, and that Defendants' request for a stay of any non-arbitrable claims should be denied. (DE 89, pgs. 8–12).

### A. Whether AXA should be Compelled to Arbitrate its Claims against Brasner

As noted previously, parties cannot be forced to arbitrate disputes which they have not agreed to arbitrate. *See Int'l Underwriters, AG & Liberty Re–Insurance Corp. v. Triple I:Int'l Invs., Inc.,* 533 F.3d 1342, 1344 (11th Cir.2008) (*quoting*

*United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)) (*as quoted in Telecom Italia, SpA v. Wholesale Telecom Corp.,* 248 F.3d 1109, 1114 (11th Cir.2001)). "Absent some violation of public policy," federal courts must refer controversies to arbitration where such controversies are covered by an arbitration agreement. *See Int'l Underwriters,* 533 F.3d at 1344 (*citations omitted*). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Int'l Underwriters,* 533 F.3d at 1344–1345 (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

### 1. Whether the Dispute is Subject to Arbitration

Brasner and Plaintiff executed two agreements: an Independent Agent Appointment Request, and an Independent Agent Sales Agreement. (DE 54, exhs. A and B). Pursuant to both agreements, Brasner was appointed as an agent of Plaintiff for purposes of selling insurance policies. (DE 54, exhs. A and B). The agreements each contain an arbitration clause:

> 25. Arbitration. Any controversy, claim, or dispute of any kind whatsoever between us concerning my activities shall be resolved by binding arbitration
> . . .
> 28. Arbitration. Any controversy, claim, or dispute of any kind whatsoever between the parties arising out of or relating to this agreement or any actual or alleged breach thereof, shall be resolved by submitting such controversy, claim, or dispute to binding arbitration
> . . .

(DE 54, exh. A, Independent Agent Appointment Request, ¶ 25; DE 54, exh. B,

Independent Agent Sales Agreement, ¶ 28).

Plaintiff relies on *Int'l Underwriters*, 533 F.3d at 1345 and *Seaboard Coast Line R.R. Co. v. Trailer Train Co.*, 690 F.2d 1343 (11th Cir.1982) in support of its position that the dispute herein is not subject to arbitration. (DE 89, pgs. 3–4). However, the instant case is distinguishable from both.

In *Int'l Underwriters*, 533 F.3d at 1343, Triple I sought to build a cement plant in Nigeria, and obtained a financial guarantee bond from International Underwriters AG. In order to close the transaction remotely instead of in person, Triple I and International Underwriters also executed a written escrow agreement. *See Id.* Although the written bond commitment did not contain an arbitration clause, the escrow agreement called for arbitration of "any dispute arising pursuant to or in any way related to *this Agreement or the transactions contemplated thereby.*" *Id.* (*emphasis added*). After a dispute arose, Triple I eventually commenced an action against International Underwriters demanding the return of 5.2 million dollars, claiming that the whole deal was a sham from the outset. *See Id.* International Underwriters moved to compel arbitration based on the arbitration clause contained in the escrow agreement, and the district court denied the motion. *See Id.*

On appeal, the Eleventh Circuit affirmed. *See Id.* at 1345–1349. In so doing, the Court held that the arbitration clause contained in the escrow agreement only applied to disputes relating to the escrow agreement, not to the overall trans-

action, because (1) the arbitration clause contained in the escrow agreement only called for arbitration of "transactions contemplated" by the escrow agreement, such as the tendering and delivery of documents and funds; and, (2) the parties' primary agreement, the written bond commitment, did not contain an arbitration clause. *See Id.* at 1345–1346. The Court also distinguished the matter from *Blinco v. Green Tree Servicing, LLC*, 400 F.3d 1308 (11th Cir.2005), where the parties' central document included an arbitration clause, and where such clause applied to disputes arising from both the central document and the relationships that resulted from such document. *See Id.* at 1346–1347.

The instant case differs from *Int'l Underwriters* in two respects. First, while the arbitration clause contained in the Independent Sales Agreement herein is arguably similar to the arbitration clause contained within the escrow agreement in *Int'l Underwriters* in that it contains a qualifying phrase which could be read as compelling arbitration of disputes which only specifically relate to that agreement, the arbitration clause contained within the Independent Agent Appointment Request does not contain such a qualifying phrase.[5] Second, and perhaps most importantly, although the parties' primary agreement in *Int'l Underwriters AG* failed to contain an arbitration clause, here, both agreements between Plaintiff and Brasner each contain arbitration clauses.

In *Seaboard*, 690 F.2d at 1345, Trailer Train licensed certain rail cars to Seaboard. Subsequently, to take advantage of

---

**5.** The Independent Sales Agreement provides that "[a]ny controversy, claim, or dispute of any kind whatsoever between the parties **arising out of or relating to this agreement** or any actual or alleged breach thereof, shall be resolved by submitting such controversy, claim, or dispute to binding arbitration." (DE 54, exh. B, ¶ 28) (emphasis added). The Independent Agent Appointment Request provides that "[a]ny controversy, claim, or dispute of any kind whatsoever between us concerning my activities *shall* be resolved by binding arbitration." (DE 54, exh. A, Independent Agent Appointment Request, ¶ 25).

a tax credit, Trailer Train leased some of the same cars to Seaboard. *See Id.* at 1346–1347. While the license agreement contained an arbitration clause, the lease agreement did not. *See Id.* at 1345. After the IRS declined to allow Seaboard a tax credit for the year 1973 due to lack of documentation, Seaboard commenced an action against Trailer Train alleging breach of contract for failing to provide the documentation for the tax credit. *See Id.* at 1348. Seaboard also moved to compel arbitration pursuant to the arbitration clause contained in the license agreement. *See Id.* The district court denied the motion to compel arbitration, and the Eleventh Circuit affirmed for two reasons. *See Id.* at 1352.

First, the Court concluded that the agreement which contained the arbitration clause, the license agreement, was not an "umbrella" agreement which was intended to cover all aspects of the relationship between the parties. *See Id.* at 1350. Rather, the license agreement was narrowly drafted to address one item: the per diem rate for the supply of rail cars. *See Id.* at 1349–1350. In reaching such conclusion, the Court emphasized that language in the arbitration clause did not contain the same type of expansive language as used in *Hilti, Inc. v. Oldach,* 392 F.2d 368 (1st Cir.1968), which called for arbitration of " . . . any controversy or claim arising out of or relating to the breach" of the contract at issue therein. *See Id.* at 1349–1350. Second, the Court concluded that although the license and lease agreements were related, the license agreement was limited in scope, and that its arbitration clause could not be said to encompass the " 'distinct and separate' dispute between the parties," which was not related to the license agreement. *See Id.* at 1351.

The instant case also differs from *Seaboard* in two respects. First, unlike the arbitration clause in *Seaboard,* the arbitra-

tion clause in the Independent Agent Appointment Request contains the all-inclusive statement that "[a]ny controversy, claim, or dispute of any kind whatsoever between us concerning my activities shall be resolved by binding arbitration," which is the very type of language that the Eleventh Circuit found lacking in *Seaboard.* Second, unlike *Seaboard,* both agreements at issue herein contain arbitration clauses.

The instant case is more like *Triple I: Int'l Investments, Inc. v. K2 Unltd.,* 287 Fed.Appx. 63 (11th Cir.2008), where the Eleventh Circuit reversed an order denying a motion to compel arbitration. *Triple I* arose from the same business venture at issue in *Int'l Underwriters,* 533 F.3d 1342, discussed previously. In *Triple I,* Triple I hired K2 Unlimited to help find an entity that would issue a financial guaranty bond as collateral for the contemplated loan. *See Triple I,* 287 Fed.Appx. at 64. Triple I and K2 entered into a written agreement which contained an arbitration clause requiring arbitration of "[a]ny legal dispute arising from" the agreement. *See Id.* K2 found a Japanese lender, Japan Venture Fund Group, and an issuer of the financial guarantee bond, International Underwriters. *See Id.* After the financial arrangement collapsed during the escrow phase, litigation ensued with Triple I suing K2 for fraud and related theories, but not for breach of the underlying agreement. *See Id.* The amended complaint focused on K2's failure to perform the agreement, and alleged that K2 participated in a charade. *See Id.*

In support of its holding that the district court erred by denying the motion to compel arbitration, the Eleventh Circuit reasoned that because the agreement between Triple I and K2 defined their entire relationship, and because the agreement called for arbitration of "any legal dispute arising from" their agreement, the agreement

called for arbitration of the fraud and tort claims at issue. *See Id.* at 64–66. (*citations omitted*). Also, in summarizing its decisions addressing arbitration clauses applicable to disputes "arising from" or "related to" an underlying agreement, the Court emphasized that it has required arbitration "where the tort could not have occurred but for a breach of contract." *Id.* at 66 (*quoting Telecom Italia, SpA v. Wholesale Telecom Corp.,* 248 F.3d 1109, 1114–1115 (11th Cir.2001)). The Court also repeated the rule that a dispute "arises out of" a contract if it is "related-with at least some directness-to performance of duties specified by the contract." *Id.* at 66 (*quoting Telecom Italia, SpA,* 248 F.3d at 1116).

*Triple I* requires that the dispute between Plaintiff and Brasner be arbitrated. Just as in Triple I, the Independent Agent Appointment Request contains a broad arbitration clause. Moreover, both agreements at issue herein define the parties' entire relationship, and the tort alleged could not have occurred but for the alleged breach of contract. Finally, because the parties' dispute is directly related to Brasner's performance of duties specified by the contract, it follows that the dispute "arises out of the contract." *Id.* at 66.

## 2. Reverse Preemption

Plaintiff next argues that the McCarran–Ferguson Act and Florida law operate to "reverse preempt" application of the FAA. (DE 89, pgs. 4–6) (*citing United Ins. Co. of America v. Office of Ins. Regulation,* 985 So.2d 665 (Fla.Dist.Ct.App.2008)). In response, Brasner argues that (1) Plaintiff's claims against Brasner and the related Infinity Defendants are not "matters concerning the enforcement of insurance contracts" because Plaintiff's claims arise from the arbitration agreements, not the separate insurance contracts; (2) *United Ins. Co. of America* is distinguishable from the instant case; and, (3) the doctrine of

reverse preemption does not apply to invalidate the controlling arbitration agreements. (DE 93, pg. 5). Plaintiff's argument is not persuasive.

Generally, federal law preempts state law by virtue of the Supremacy Clause. *See United Ins. Co. of America,* 985 So.2d at 666 (*citing United States Const., art. VI, cl. 2* ). However, pursuant to the McCarran–Ferguson Act, the States have the primary responsibility for regulating the insurance industry. *See Barnhardt Marine Ins., Inc. v. New England International Surety of America, Inc.,* 961 F.2d 529, 531 (5th Cir.1992). The purpose of the Mc–Carran Ferguson Act is to broadly support the existing and future state systems for regulating and taxing the business of insurance. *See United States Dept. of Treasury v. Fabe,* 508 U.S. 491, 500, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993) (*quoting Prudential Ins. Co. v. Benjamin,* 328 U.S. 408, 429, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946)).

The relevant provisions of the McCarran–Ferguson Act provide,

§ 1011. **Declaration of policy**

Congress hereby declares that the continued regulation and taxation by the several States of the *business of insurance* is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

§ 1012. **Regulation by State law; Federal law relating specifically to insurance; applicability of certain Federal laws after June 30, 1948**

(a) State regulation

The *business of insurance,* and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(a) Federal regulation

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the *business of insurance*, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance.

15 U.S.C. §§ 1011, 1012(a), (b) (2008) (*emphasis added* ).

In *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1221 (11th Cir.2001), the Eleventh Circuit noted that the Act bars the operation of federal law if

(1) the federal statute at issue does not " 'specifically relat[e] to the business of insurance' ";

(2) the state statute at issue was " 'enacted ... for the purpose of regulating the business of insurance' "; and,

(3) application of the federal statute would " 'invalidate, impair, or supersede' " the state statute.

267 F.3d at 1220 (*quoting Humana Inc. v. Forsyth*, 525 U.S. 299, 307, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999)) (*alterations in original* ) (*quoting* 15 U.S.C. § 1012(b)).

As to the first prong, Courts have held that the FAA does not specifically relate to the business of insurance. *See Nat'l Home Ins. Co. v. King*, 291 F.Supp.2d 518, 528 (E.D.Ky.2003) (*citing Stephens v. American Int'l Ins. Co.*, 66 F.3d 41, 44 (2d Cir.1995)).

As to the second prong, Plaintiff does not argue that any specific Florida statute was enacted for the purpose of regulating the business of insurance. (DE 89, pgs. 4–6). Rather, Plaintiff cites *United Ins. Co. of America*, 985 So.2d at 668, where a

Florida state court held that section 624.155 is a statute which regulates the business of insurance because the statute permits "any person" to bring "a civil action against an insured when such person is damaged by a violation of the insurer" of certain statutory provisions. In so holding, the court commented that "[t]he Florida legislature ... has determined that the business of insurance with respect to the enforcement of the contract shall be in the courts." *Id.* at 669.

However, both the Eleventh Circuit and another Florida court have reached contrary conclusions. *See Anschultz v. Conn. Gen. Life Ins. Co.*, 850 F.2d 1467, 1469 (11th Cir.1988) (holding that section 624.155 is not a statute which regulates the insurance industry because the statute does not meet the three prong test [6] enunciated in *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). In so holding, the Court reasoned that although section 624.155 is directed toward the insurance industry, and applies only to the insurance industry, "[t]he statute transfers or spreads no policyholder risk," and the statute is not "an integral part of the policy relationship between the insurer and the insured." *See also American Int'l Group, Inc. v. Siemens Bldg. Techs., Inc.*, 881 So.2d 7, 12 (Fla.Dist.Ct.App.2004) (holding that section 624.155 is not "a law ... regulating insurance to which McCarran–Ferguson might apply") (*citing Anschultz*, 850 F.2d 1467).)

As to the third prong, Plaintiff has failed to show how the FAA, which favors arbitration between contracting parties, conflicts with Florida section 624.155, because

**6.** In *Pireno*, 458 U.S. at 129, 102 S.Ct. 3002, our High Court listed three factors to use in determining what activities constitute the "business of insurance:" (1) "whether the practice has the effect of transferring or spreading a policyholder's risk;" (2) "whether the practice is an integral part of the policy relationship between the insurer and the insured;" and, (3) "whether the practice is limited to entities within the insurance industry." (*quoted in Fabe*, 508 U.S. at 497, 113 S.Ct. 2202).

the Florida statute merely "... provides, regardless of the substantive terms of the [policy], that an alleged breach of the [policy] will allow a beneficiary ... to pursue various civil remedies" against the insurer. *See Anschultz*, 850 F.2d 1467 (*citing Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Based on the failure to demonstrate any conflict between Florida and federal law, it cannot be said that application of the federal statute would " 'invalidate, impair, or supersede' " the state statute. *See Moore*, 267 F.3d at 1222–1223 (finding that the McCarran–Ferguson Act did not require reverse preemption of the plaintiff's §§ 1981 and 1982 claims; noting that the state statute was consistent with the federal policy of preventing discrimination, and that the defendant failed to show that the federal statutes impinged on any state policy in the insurance context).

In light of the foregoing, this Court concludes that the McCarran–Ferguson Act does not preclude operation of the FAA in the instant case.

## B. Whether AXA should be Compelled to Arbitrate its Claims Against Infinity Defendants

Brasner and the related Infinity Defendants also argue that the court should compel arbitration of Plaintiff's claims against the related Infinity Defendants, notwithstanding the fact that the related Infinity Defendants are non-signatories to the arbitration agreements, because (1) Plaintiff's causes of action against the related Infinity Defendants in the Amended Complaint are identical to those asserted against Brasner; and (2) the relationship between the related Infinity Defendants and Brasner is sufficiently close such that the only way to avoid evisceration of the underlying arbitration agreement is to allow the non-signatory to invoke the underlying arbitration agreement of the signatory parties. (DE 54, pgs. 11–14) (*citing MS*

*Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999)). Plaintiff contends that *MS Dealer* does not require arbitration and that the claims asserted against the related Infinity Defendants are separate and distinct from those asserted against Brasner. (DE 89, pgs. 6–8). In the alternative, Plaintiff requests that if the Court grants the motion to compel arbitration as to Brasner, that the Court permit Plaintiff to conduct limited discovery into the independent conduct of the Infinity Defendants. (DE 89, pgs. 8–9) (*citations omitted*).

A party need not necessarily be a signatory to an arbitration agreement to invoke an arbitration clause. *See MS Dealer*, 177 F.3d at 947 (*citing Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756–57 (11th Cir.1993)). The Eleventh Circuit has enumerated three bases under which non-signatories may be permitted to compel arbitration: (1) equitable estoppel; (2) agency or related principles; and, (3) third-party beneficiary. *See MS Dealer*, 177 F.3d at 947. The arguments raised by Brasner and the Related Defendants focus on the theories of equitable estoppel and agency or related principles. (DE 54, pg. 13).

Pursuant to the theory of agency or related principles, arbitration should be permitted because "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *MS Dealer*, 177 F.3d at 947 (*citing Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1432 (M.D.Ala.1997)).

As for equitable estoppel, the theory applies in two circumstances. *MS Dealer*, 177 F.3d at 947. First, the theory applies when the signatory to a written agreement

containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. *See Id.* (*citing Sunkist Soft Drinks,* 10 F.3d at 757). Where each claim by a signatory against a non-signatory either "makes reference to" or "presumes the existence of" the written agreement, then the signatory's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," such that arbitration is appropriate. *See Id.* (*citing Sunkist Soft Drinks,* 10 F.3d at 758). Second, where a signatory to an agreement containing an arbitration clause "raises allegations of . . . substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract," arbitration should be permitted because "otherwise, 'the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.' " *Id.* (*quoting Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679, 681 (5th Cir.1976)). To determine whether equitable estoppel applies, a court must examine the nature of the claims raised by the signatory against the non-signatory to determine if the claims fall within the scope of the arbitration clause contained in the written agreement. *See Id.* at 948.

After reviewing Plaintiff's amended complaint, this Court concludes that *MS Dealer* requires that Plaintiff's claims against the related Infinity Defendants be arbitrated under the second theory of equitable estoppel. Plaintiff's amended complaint fails to contain any specific allegations which are focused solely on the actions of the related Infinity Defendants. (DE 50, pgs. 1–37). Rather, the amended complaint repeatedly refers to all Defendants generically in a group. Similar to *MS Dealer,* 177 F.3d at 948, where the

signatory alleged that the non-signatory and the other signatory engaged in a scheme to defraud her, Plaintiff herein refers to a "fraudulent scheme" "perpetrated by Defendants," "perpetrated by all Defendants," "Defendants' SOLI [7] scheme," and "their scheme." (DE 50, pgs. 2, 4, 20, 24, 27, 28). And, just as the plaintiff signatory in *MS Dealer,* 177 F.3d at 948, alleged that the non-signatory and the other signatory conspired to engage in their fraudulent scheme, here, Plaintiff alleges, in its civil conspiracy count, that "Defendants consist of multiple parties, . . . all of whom committed acts in furtherance of an overall scheme known by the Insureds, the Trusts, the Trustees, Brasner, and certain others," and that the "scheme consisted of numerous fraudulent acts and misrepresentations on the part of Defendants." (DE 50, pgs. 29, 30). Given such allegations, it appears that Plaintiff's claims against Brasner and the related Infinity Defendants "are based on the same facts and are inherently inseparable." *Id.* (*Quoting Sunkist Soft Drinks,* 10 F.3d at 757). Moreover, because Plaintiff lumps the related Infinity Defendants in with all the other named Defendants, and alleges "substantially interdependent and concerted misconduct" by both Brasner and the related Infinity Defendants, it follows that arbitration of Plaintiff's claims against the related Infinity Defendants is appropriate. *See MS Dealer,* 177 F.3d at 947.

In light of the foregoing, this Court **RECOMMENDS** that the District Court **GRANT** the Brasner and Related Defendants' Motion to Compel Arbitration. (DE 54).

### C. *Plaintiff's Request for Discovery*

Plaintiff "seeks to conduct limited discovery into the conduct of the related In-

---

7. SOLI is an acronym for "stranger originated life insurance." (DE 50, pg. 6).

finity Defendants and the roles they played in the underlying transactions" if the Court determines that the claims against Brasner should be arbitrated. (DE 89, pgs. 1, 8–12). Brasner and the related Infinity Defendants oppose the request. (DE 93, pgs. 6–7) (*citations omitted*).

Courts may or may not allow discovery on the issue of arbitrability. *See PCH Mut. Ins. Co., Inc. v. Cas. & Surety, Inc.,* 569 F.Supp.2d 67, 77–78 (D.D.C.2008) (allowing limited discovery into threshold issue of arbitrability); *O.N. Equity Sales Co. v. Broderson,* No. 07–CV–13482–DT, 2008 WL 427468, *4 (E.D.Mich. Feb. 14, 2008) (denying request for discovery on the issue of arbitrability). However, a court may also stay discovery related to the merits of the litigation pending resolution of the arbitrability issue. *See PCH Mut. Ins. Co., Inc.,* 569 F.Supp.2d at 77–78 (staying discovery as to the merits of the case, and allowing discovery into limited issue of arbitrability). Here, Plaintiff's request for discovery appears to bear more on the merits of the litigation rather than the issue of arbitrability. As such, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's request for discovery. (DE 89).

## II. Motion to Compel Arbitration filed by the LBEG Defendants

LBEG, Richardson, and Bechtel (collectively referred to as "the LBEG Defendants") join in the motion to compel arbitration filed by Brasner and the related Infinity Defendants. (DE 59, pg. 1, n. 1). They argue that Plaintiff should be compelled to arbitrate its claims against the LBEG Defendants because (1) Plaintiff's claims in the amended complaint against LBEG relate to the broker contracts executed by LBEG, given the expansive language "any kind whatsoever," and "arising

from or relating to" contained within the broker agreements; and, (2) Bechtel, a non-signatory to the arbitration agreement, is entitled to have its claims arbitrated under agency or related principles. (DE 59, pgs. 2–5; DE 60, pg. 3). The LBEG defendants also seek to have this action stayed pending arbitration because a stay will promote judicial economy and prevent possible inconsistent results between the arbitrators and the courts. (DE 59, pg. 5).

Plaintiff again argues that (1) the claims asserted against the LBEG defendants are not subject to arbitration because they do not arise out of the agreements between LBEG and AXA; (2) the FAA is "reverse pre-empted" by Florida law; and, (3) the non-arbitrable claims should not be stayed. (DE 88, pgs. 1–9).

### A. Whether Plaintiff's Dispute with Richardson and LBEG is Subject to Arbitration

The agreement executed by LBEG[8] and Plaintiff provides,

> Arbitration. *Any controversy, claim, or dispute of any kind whatsoever* between the parties *arising out of or relating to* this Agreement or any actual or alleged breach thereof shall be resolved by submitting such controversy, claim, or dispute to binding arbitration . . .

(DE 59, exh. A, ¶ 9) (*emphasis added*).

"Absent some violation of public policy," federal courts must refer controversies to arbitration where such controversies are covered by an arbitration agreement. *See Int'l Underwriters,* 533 F.3d at 1344 (*citations omitted*). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Int'l Underwriters,* 533 F.3d at 1344–1345 (*quoting Moses H. Cone Mem'l Hosp.,* 460 U.S. at

---

**8.** Richardson signed the agreement on behalf of LBEG. (DE 59, exh. A).

24–25, 103 S.Ct. 927). *See also Provident Bank v. Kabas,* 141 F.Supp.2d 310, 315–316 (E.D.N.Y.2001) (*citing Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25, 103 S.Ct. 927). A court should compel arbitration "unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that the covers the asserted dispute." *Provident Bank,* 141 F.Supp.2d at 316 (*quoting McAllister Bros., Inc. v. A. & S. Transp. Co.,* 621 F.2d 519, 522 (2d Cir.1980), as quoted in *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd.,* 923 F.2d 245, 250 (2d Cir.1991)). "Arbitration clauses couched in language encompassing all disputes 'arising under' or 'in connection with' an agreement are referred to as the 'prototypical broad' arbitration provision justifying a presumption in favor or arbitration." *Provident Bank,* 141 F.Supp.2d at 316 (*citing Oldroyd v. Elmira Sav. Bank,* 134 F.3d 72, 76 (2d Cir.1998)). If the allegations of the plaintiff "touch matters covered by" the parties' agreement to arbitrate, then such claims must be arbitrated, "whatever the legal labels attached to them." *Provident Bank,* 141 F.Supp.2d at 316 (*quoting WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 75 (2d Cir.1997); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir.1987)). It is well settled that a party may not avoid an agreement to arbitrate by casting claims in tort rather than breach of contract. *See Sease v. PaineWebber, Inc.,* 697 F.Supp. 1190, 1193 (S.D.Fla.1988) ("A plaintiff cannot avoid broad language agreeing to arbitration by pleading a cause of action in tort.") (*citing Shearson Hayden Stone, Inc. v. Scrivener,* 671 F.2d 680 (2d Cir. 1982); *Stern v. Mitsui Bussan Kaisha, Ltd.,* 385 F.2d 158 (2d Cir.1967)); *McBro Planning and Dev. Co. v. Triangle Elec. Const. Co.,* 741 F.2d 342, 344 (11th Cir. 1984) (". . . it is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract.") (*citing Acevedo Maldonado v. PPG Indus., Inc.,* 514 F.2d 614 (1st Cir.1975)).

Application of the foregoing leads this Court to conclude that for two reasons, Plaintiff must be compelled to arbitrate its dispute with Richardson and LBEG. First, the arbitration clause at issue herein contains the "prototypical broad" language which, according to *Provident Bank,* leads to a presumption in favor of arbitration. Second, Plaintiff's attempt to cast its claim in tort cannot negate the fact that its claim is, in essence, a claim for breach of contract. Although in count 7 of the amended complaint, Plaintiff alleges that "the Brokers" were negligent in that they breached their duty of care owed to Plaintiff to procure the policies in a manner consistent with their brokerage agreements, state law, and public policy, (DE 50, pg. 35), count 6 of the amended complaint is a claim for rescission of the life insurance policies based on "the brokers" fraudulent actions allegedly committed in violation of the brokerage agreements. (DE 50, pg. 33–34).[9]

This Court therefore **RECOMMENDS** that the District Court **GRANT** the Mo-

---

**9.** In count 6, Plaintiff seeks to recover the commissions paid to Brasner, Richardson and Bechtel in connection with the insurance policies. (DE 50, pg. 34). In count 6, Plaintiff realleges and incorporates by reference paragraphs 1–98 of the amended complaint, wherein Plaintiff describes the circumstances of Defendants' alleged fraudulent conduct. (DE 50, pg. 33). In count 7, Plaintiff asserts a claim for negligence and disgorgement of profits against "the Brokers," and states that "the Brokers" breached their duty of care owed to Plaintiff to procure the policies in a manner consistent with their brokerage agreements, state law, and public policy. (DE 50, pg. 35). The amended complaint refers to Brasner, Richardson, and Bechtel collectively as "the Brokers." (DE 50, pg. 2).

tion to Compel Arbitration as to Defendants Richardson and LBEG. *See Provident Bank*, 141 F.Supp.2d at 313–314 (granting motion to compel arbitration of claims including fraud, breach of fiduciary duty, negligence, and rescission where arbitration clause provided that all disputes 'arising out of' the agreement were to be settled by arbitration, and because all the claims arose out of alleged breaches of duty imposed by the parties' loan agreement); *Sease*, 697 F.Supp. at 1192–1193 (holding that claims of breach of fiduciary duty, negligence, and fraud were subject to arbitration in light of broad arbitration clause which called for arbitration of "[any] controversy ... arising out of or relating to this agreement, breach thereof, or any account(s) ...") (*citing Shearson Hayden Stone, Inc.*, 671 F.2d 680; *Stern*, 385 F.2d 158).

### B. Whether AXA should be Compelled to Arbitrate its Claims Against Bechtel

The LBEG Defendants next argue that Plaintiff should be compelled to arbitrate its claims against Bechtel, a non-signatory to the arbitration agreement. (DE 60, pg. 3) (*citing MS Dealer Corp.*, 177 F.3d at 947; *Hirschfeld Prods., Inc. v. Mirvish*, 88 N.Y.2d 1054, 651 N.Y.S.2d 5, 673 N.E.2d 1232, 1233 (1996); *McBro Planning and Dev. Co. v. Triangle Elec. Const. Co.*, 741 F.2d 342, 344 (11th Cir.1984)).

In the case at hand, nothing in the brokerage agreements indicate that the agreement was undertaken for the benefit of any entities or individuals, including· the signing individuals, apart from Plaintiff and LBEG. (DE 59, exh. A). Such factor could lead to the conclusion that Plaintiff should not be compelled to arbitrate its claims against Bechtel. *See Greater New York Mutual Ins. Co. v. Rankin*, 298 A.D.2d 263, 748 N.Y.S.2d 381, 382 (2002) (affirming order which denied motion to compel filed by non-signatory because nothing in the arbitration clause suggested that the sublease signatories intended to confer on the non-signatory movant the right to compel arbitration of disputes arising under the sublease; stating, "Under New York law, the right to compel arbitration does not extend to a party that has not signed the agreement pursuant to which arbitration is sought unless the right of the nonsignatory is expressly provided for in the agreement.") (*citations omitted*).

However, where the alleged misconduct of the agent relates to the agent's behavior as an officer or director or the agent's capacity as agent of the corporation, courts permit the agent to benefit from arbitration agreements entered into by his or her principals. *See Nardi v. Povich*, 12 Misc.3d 1188(A), 824 N.Y.S.2d 764, 2006 WL 2127714, *4 (N.Y.Sup.Ct. July 31, 2006) (*quoting Hirschfeld Prods., Inc.*, 651 N.Y.S.2d 5, 673 N.E.2d at 1233) ("Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation.") The purpose of such rule is "not only to prevent circumvention of arbitration agreements but also to effectuate the intent of the signatory parties to protect individuals acting on behalf of the principal in furtherance of the agreement." *Hirschfeld Prods., Inc.*, 651 N.Y.S.2d 5, 673 N.E.2d at 1233.

Based on the foregoing, Plaintiff should be compelled to arbitrate its claims against Bechtel. Bechtel's alleged misconduct arises out of his status as a broker and principal of LBEG. (DE 50, pgs. 2, 9, 16, 33–35). Nowhere in the amended complaint does Plaintiff allege that Bechtel acted outside the scope of his capacity as a broker or principal of LBEG. (DE 50, pgs.

1–37). As such, because his misconduct relates to his behavior as an individual broker and principal of LBEG, Bechtel should be permitted to benefit from the arbitration agreement entered into by LBEG and Plaintiff. *See Nardi,* 824 N.Y.S.2d 764, 2006 WL 2127714 at *4; *Hirschfeld Prods., Inc.,* 651 N.Y.S.2d 5, 673 N.E.2d at 1233. *See also Provident Bank,* 141 F.Supp.2d at 315, 317 (finding that although neither the parent company of one of the named defendants nor the officers of the named defendant were signatories to the arbitration agreement, both the parent company and the officers should be permitted to avail themselves of the arbitration agreement because they were sued as officers and agents of the named defendant, and there were no allegations that any of the officers acted outside of their capacity as officers of the named defendant during the transactions at issue).

### C. Reverse Preemption

Once again, Plaintiff argues that the McCarran–Ferguson Act bars application of the FAA herein. (DE 88, pgs. 4–5). However, for the reasons previously discussed *supra* at pages 1339–42, this Court concludes that the McCarran–Ferguson Act does not preclude operation of the FAA herein.

### III. Whether the Action Should be Stayed Pending Arbitration

Both Brasner and the LBEG Defendants argue the matter should be stayed under 9 USC § 3. (DE 54, pgs. 14–15; DE 59, pgs. 6–7; DE 60, pgs. 4–8). Brasner and the related Infinity Defendants request that the Court stay the litigation as to the insureds, trusts, and trustees because the claims against such parties are dependent on the claims against Brasner and the related Defendants, and because a stay will promote judicial economy, reduce confusion and prejudice, and prevent possible inconsistent resolutions. (DE 54, pgs. 14–15) (*citations omitted*).

Similarly, the LBEG Defendants argue that a stay will promote judicial economy, prevent inconsistent determinations. (DE 59, pg. 6; DE 60, pgs. 5–6) (*citations omitted*). The LBEG Defendants also contend that threshhold issues as to Plaintiff's fraud claim would be addressed at arbitration, and that such issues form the basis for Plaintiff's claims for rescission and equitable relief, which would subsequently be addressed by the Court. (DE 59, pg. 6; DE 60, pgs. 6–7). Finally, all Defendants note that even where non-signatories are parties to litigation with signatories, courts may stay the entire litigation. (DE 54, pg. 14; DE 60, pg. 4) (*citations omitted*).

Plaintiff argues that the request for stay should be denied because (1) the potentially arbitrable claims do not predominate; and, (2) the outcome of the nonarbitrable claims is not dependent on any decision of the arbitrators. (DE 89, pgs. 9–12) (*citations omitted*).

In its objection to both motions to compel arbitration, the Delaware Trust Defendants argue that the proceedings should not be stayed if arbitration is compelled because their motion to dismiss the first amended complaint has been pending since August 5, 2008, and because the claims asserted by Plaintiff against the Delaware Trust defendants are not subject to arbitration. (DE 82, pgs. 1–4).

Section 3 of the FAA provides that a district court shall stay a suit "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration" under a valid arbitration agreement. *See Klay v. All Defendants,* 389 F.3d 1191, 1204 (11th Cir.2004) (*quoting* 9 U.S.C. § 3). According to section 3, a stay is mandatory for arbitrable issues. *See Klay,* 389 F.3d at 1204 (*quoting Shear-*

son/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)) ("[A] court must stay its proceedings if it is satisfied that an issue before it is arbitrable ..."). Where a case presents both arbitrable and non-arbitrable claims, the court has the discretion to stay non-arbitrable claims. See Klay, 389 F.3d at 1204 (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 21 n. 23, 103 S.Ct. 927; AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 242 F.3d 777, 782–83 (8th Cir.2001); Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir.1976)). In such cases, courts generally refuse to stay litigation of non-arbitrable claims where it is feasible to proceed with the litigation. See Klay, 389 F.3d at 1204 (citing Dean Witter Reynolds, Inc., 470 U.S. at 225, 105 S.Ct. 1238). The United States Supreme Court has observed that in drafting the FAA, Congress specifically contemplated that piecemeal litigation may result from enforcing agreements to arbitrate. See Dean Witter Reynolds, Inc., 470 U.S. at 219–221, 105 S.Ct. 1238.

Notwithstanding the potential for piecemeal litigation, "the decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." See Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 856 (2d Cir.1987) (citing Moses H. Cone, 460 U.S. at 20 n. 23, 103 S.Ct. 927). Where "arbitrable claims predominate and the nonarbitrable claims are of questionable merit," a broad stay order is appropriate. See Genesco, Inc., 815 F.2d at 856 (noting that on remand, the district court should determine whether, on balance, there should be a stay) (citing Dean Witter Reynolds, Inc., 470 U.S. 213, 105 S.Ct. 1238). See also Klay, 389 F.3d at 1204 (citing Genesco, Inc., 815 F.2d at 856).[10]

The court should also consider the expense and inconvenience of parallel litigation, the possibility of inconsistent determinations, and whether arbitrable and non-arbitrable claims arise out of the same set of facts. See Provident Bank, 141 F.Supp.2d at 318–319 (citations omitted). Finally, a party should not be permitted to avoid arbitration by suing a related non-signatory "with the hope that the claim will be adjudicated first and have preclusive effect on the arbitration." Provident Bank, 141 F.Supp.2d at 319 (quoting WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir.1997); IDS Life Ins. Co. v. SunAmerica, Inc., 103 F.3d 524, 530 (7th Cir.1996)).

This Court concludes that a stay of the entire litigation is appropriate. Although only one-half of the claims contained in the amended complaint are arbitrable in that they are lodged against Brasner or "the brokers," and are within the scope of the broad arbitration clauses, the fact remains that the core of Plaintiff's suit focuses on alleged breaches of the arbitration agreements.[11] Counts 1 through 4, which are lodged only against "the Insureds," "the

---

**10.** The Second and Eleventh Circuits have slightly different standards as to the issue of whether to enter a stay. While the Eleventh has stated that the court should consider whether "arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision," the Second Circuit has stated that a stay is appropriate where "arbitrable claims predominate and the nonarbitrable claims are of questionable merit." Klay, 389 F.3d at 1204; Genesco, Inc., 815 F.2d at 856. Nevertheless, because the LBEG motion to compel arbitration is being decided pursuant to New York law, and the Brasner motion is being decided pursuant to federal common law, the Second Circuit standard is applicable to both motions to stay.

**11.** Only Counts 5 though 8 are specifically lodged against Brasner, "the Trustees," and/or "the Brokers." (DE 50, pgs. 31–37).

Trusts," and "the Trustees," expressly incorporate by reference all the factual allegations concerning Brasner, Richardson, and their entities. (DE 50, pgs. 21–31). Counts 2, 3, and 4 expressly refer to the "SOLI scheme" or the "scheme" perpetrated by all Defendants. (DE 50, pgs. 24, 27, 30). Counts 1 through 3 seeks rescission of the insurance policies based on fraudulent statements made in the application process. (DE 50, pgs. 21–29). Count 4 alleges that "all" Defendants "committed acts in furtherance of an overall scheme known by the Insureds, the Trusts, the Trustees, Brasner, and certain others," and that "the Insureds, Trusts, and Trustees engaged in" a civil conspiracy with the "Brokers." (DE 50, pgs. 29–31, ¶¶ 126, 128). As such, it appears that the arbitrable claims predominate.

As discussed above with respect to counts 1 through 4, all claims lodged against the Delaware Trust Defendants arise out of the same facts as those which serve as the basis for Plaintiff's claims against Brasner, the related Infinity Defendants, LBEG, Richardson, and Bechtel. As a result, litigation in the District Court would only serve to duplicate efforts and could lead to possible inconsistent determinations. Moreover, if the claims against Brasner, the related Infinity Defendants, LBEG, Richardson, and Bechtel fail, the claims against the Delaware Trust Defendants may likewise fail. This Court therefore **RECOMMENDS** that the District Court **GRANT** the motions to stay, and stay the entire litigation pending the outcome of arbitration. (DEs 54, 59).

*See Provident Bank,* 141 F.Supp.2d at 319 (denying motion to stay raised by non-signatory because the claims against the non-signatory arose out of the same facts as the arbitrable claims, and allowing the case to proceed would result in a duplication of efforts and possible inconsistent results); *Acquaire v. Canada Dry Bot-*

*tling,* 906 F.Supp. 819, 838 (E.D.N.Y.1995) (entering stay as to nonarbitrable claims lodged against a "myriad of entities" which the plaintiff alleged participated in monopoly scheme because (1) such claims were derivative in nature, "peripheral to," and "[grew] out of" the claims lodged against the parties to the arbitration agreements; (2) most of the non-arbitrable claims would be resolved based on the arbitrable claims; and, (3) many of the non-arbitrable claims would fail if the claims lodged against the parties to the arbitration agreement were found to be meritless) (*citing Genesco, Inc., supra*).

## CONCLUSION

In conclusion, this Court **RECOMMENDS** that the District Court **GRANT** the Motions to Compel Arbitration and the motions to stay contained therein. (DEs 54, 59).

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T.K. Hurley, United States District Court Judge for the Southern District of Florida, within ten (10) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Warren,* 687 F.2d 347, 348 (11th Cir.1982), *cert. denied,* 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger,* 847 F.2d 745 (11th Cir.1988), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988); *RTC v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993).

**DONE AND SUBMITTED** in Chambers this 26th day of January, 2009, at West

Palm Beach in the Southern District of Florida.